**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MICHAEL D. COHEN,

        Plaintiff,

        v.

UNITED STATES OF AMERICA, *et al.*,

        Defendants.

No. 21 Civ. 10774 (LJL)

 

**MEMORANDUM OF LAW IN SUPPORT OF MOVING**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
Attorney for Moving Defendants
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2691/2822
Fax: (212) 637-2786
E-mail: allison.rovner@usdoj.gov
      alyssa.o'gallagher@usdoj.gov

ALLISON M. ROVNER
ALYSSA B. O'GALLAGHER
Assistant United States Attorneys
    - Of Counsel -

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ................................................................................................................3

LEGAL STANDARDS ........................................................................................................6

ARGUMENT ....................................................................................................................7

I.      The Court Should Dismiss Cohen's FTCA Claims ............................................7

        A.      Cohen's First Amendment Retaliation Claim Is Not Cognizable
                Under the FTCA ........................................................................................8

        B.      Cohen Has Failed to State a Legally Cognizable Claim for False Arrest, False
                Imprisonment, and Abuse of Authority and Process, or Resulting Emotional
                Distress, and the Court Lacks Jurisdiction Over These Claims ...........................9

        C.      The FTCA's Discretionary Function Exception Bars Cohen's Claims for Failure
                to Protect, Negligent Infliction of Emotional Distress, and Negligent Hiring,
                Retention, Training, and Supervision ...............................................................14

II.     The Court Should Dismiss Cohen's *Bivens* Claims ........................................20

        A.      Legal Framework ....................................................................................21

        B.      Cohen's Claims Present a New *Bivens* Context ...................................23

        C.      Special Factors Counsel Hesitation ..........................................................27

                1.      Alternative Remedial Structures Counsel Against Implying
                        a *Bivens* Remedy ...........................................................................27

                2.      Other Special Factors Counsel Against Implying a *Bivens* Remedy ...............29

        D.      Assuming a *Bivens* Remedy Exists, the Individual Moving Defendants Are
                Entitled to Qualified Immunity ....................................................................33

                1.      The Complaint Fails to Adequately Allege that Defendants Barr, Carvajal,
                        Gustin, or Petrucci Personally Participated in a Constitutional Violation .......35

                2.      The Right Was Not Clearly Established as to Any Alleged Constitutional
                        Violations by the Individual Moving Defendants ...........................................37

CONCLUSION ...................................................................................................................40

# Table of Authorities

*Cases:*

*Aguilar v. Immigration & Customs Enf't Div.*,
  811 F. Supp. 2d 803 (S.D.N.Y. 2011)...................................................................... 7
*Akande v. Philips*,
  No. 17 Civ. 1243, 2018 WL 3425009 (W.D.N.Y. July 11, 2018) ........................... 32
*Akran v. United States*,
  997 F. Supp. 2d 197 (E.D.N.Y. 2014)....................................................................... 11
*Akutowicz v. United States*,
  859 F.2d 1122 (2d Cir. 1988)..................................................................................... 13
*Anderson v. Creighton*,
  483 U.S. 635 (1987) .................................................................................................... 34
*Arar v. Ashcroft*,
  585 F.3d 559 (2d Cir. 2009)........................................................................... 23, 27, 29
*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) .................................................................................................... 35
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................ passim
*Aurecchione v. Schoolman Transp. Sys., Inc.*,
  426 F.3d 635 (2d Cir. 2005)......................................................................................... 6
*Bacon v. Phelps*,
  961 F.3d 533 (2d Cir. 2020)................................................................................ passim
*Bailor v. Salvation Army*,
  51 F.3d 678 (7th Cir. 1995)........................................................................................ 19
*Bd. of Ed. v. Farmingdale Classroom Tchrs. Ass'n, Inc.*,
  38 N.Y.2d 397 (1975) ................................................................................................. 12
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................... 7
*Berkovitz v. United States*,
  486 U.S. 531 (1988) .................................................................................................... 16
*Bistrian v. Levi*,
  912 F.3d 79 (3d Cir. 2018)......................................................................................... 32
*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
  403 U.S. 388 (1971) ....................................................................................... 1, 21, 24
*Blakey v. Pistro*,
  No. 21 Civ. 572, 2021 WL 2312647 (E.D. Pa. June 7, 2021).................................. 31
*Blanding v. Fed. Bureau of Prisons*,
  No. 21 Civ. 1115, 2021 WL 5139912 (E.D. Pa. Nov. 4, 2021) ........................ 30, 31

*Buenrostro v. Fajardo,*
  770 Fed. App'x 807 (9th Cir. 2019) .................................................................. 32

*Burkhart v. Wash. Metro. Area Transit Auth.,*
  112 F.3d 1207 (D.C. Cir. 1997) ...................................................................... 20

*Buzzanca v. District of Columbia,*
  523 F. Supp. 3d 64 (D.D.C. 2021) .................................................................. 13

*Cannenier v. Skipper-Scott,*
  No. 18 Civ. 2383, 2019 WL 764795 (S.D.N.Y. Feb. 20, 2019) ...................... 28, 29

*Carlson v. Green,*
  446 U.S. 14 (1980) ............................................................. 21, 22, 23, 25

*Carter v. United States,*
  494 F. App'x 148 (2d Cir. 2012) ...................................................................... 13

*Cohen v. United States,*
  151 F.3d 1338 (11th Cir. 1998) ...................................................................... 18

*Cook v. Sheldon,*
  41 F .3d 73 (2d Cir. 1994) .............................................................................. 12

*Coulthurst v. United States,*
  214 F.3d 106 (2d Cir. 2000) ...................................................................... 15, 18

*Crespo v. Hurwitz,*
  No. 17 Civ. 6329, 2020 WL 7021658 (E.D.N.Y. Nov. 30, 2020) .................... 26, 29

*Davis v. Passman,*
  442 U.S. 228 (1979) ....................................................................................... 21

*Dawes v. Walker,*
  239 F.3d 489 (2d Cir. 2001) ...................................................................... 31, 32

*Dixon v. von Blanckensee,*
  994 F.3d 95 (2d Cir. 2021) .............................................................................. 33

*Dugan v. Warden, FCC Coleman-USP I,*
  673 F. App'x 940 (11th Cir. 2016) .................................................................. 19

*Dykstra v. U.S. Bureau of Prisons,*
  140 F.3d 791 (8th Cir. 1998) .......................................................................... 19

*Earle v. Shreves,*
  990 F.3d 774 (4th Cir. 2021) .......................................................................... 32

*F.D.I.C. v. Meyer,*
  510 U.S. 471 (1994) ..................................................................................... 7, 8

*Fazi v. United States,*
  935 F.2d 535 (2d Cir. 1991) ............................................................................ 15

*Fernandez v. City of New York,*
  457 F. Supp. 3d 364 (S.D.N.Y. 2020) ......................................................... 12, 35

*Garcia v. Does,*
  779 F.3d 84 (2d Cir. 2015) .............................................................................. 33

*Giano v. Senkowski,*
  54 F.3d 1050 (2d Cir. 1995) ............................................................................. 38

*Gonzalez v. Hasty,*
  269 F. Supp. 3d 45 (E.D.N.Y. 2017) ......................................................... 26, 30

*Gonzalez v. Hasty,*
  802 F.3d 212 (2d Cir. 2015) ............................................................................. 39

*Hand v. Young,*
  No. 20 Civ. 784, 2021 WL 3206833 (E.D. Cal. July 29, 2021) ......................... 31

*Hernandez v. Mesa,*
  140 S. Ct. 735 (2020) ....................................................................................... 24

*Hernandez v. United States,*
  939 F.3d 191 (2d Cir. 2019) ......................................................... 8, 9, 10, 12

*Herring v. Keenan,*
  218 F.3d 1171 (10th Cir. 2000) ....................................................................... 34

*Horne v. Coughlin,*
  155 F.3d 26 (2d Cir. 1998) ............................................................................... 39

*Lewis v. Rawson,*
  564 F.3d 569 (2d Cir. 2009) ............................................................................. 38

*Lipsey v. United States,*
  879 F.3d 249 (7th Cir. 2018) ........................................................................... 19

*Liranzo v. United States,*
  690 F.3d 78 (2d Cir. 2012) ........................................................................... 9, 14

*Long Island Radio Co. v. NLRB,*
  841 F.2d 474 (2d Cir. 1988) ............................................................................... 7

*Lopez v. United States,*
  656 F. App'x 957 (11th Cir. 2016) ..................................................................... 8

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ........................................................................................... 6

*Mack v. Yost,*
  968 F.3d 311 (3d Cir. 2020) ............................................................................. 32

*Martinez-Brooks v. Easter,*
  459 F. Supp. 3d 411 (D. Conn. 2020) .............................................................. 10

*Matthias v. United States,*
  475 F. Supp. 3d 125 (E.D.N.Y. 2020) .............................................................. 16

*McGowan v. United States,*
  94 F. Supp. 3d 382 (E.D.N.Y. 2015) ........................................................... 10, 11

*McGowan v. United States,*
  825 F.3d 118 (2d Cir. 2016) ..................................................................... passim

*McGuire v. Cooper,*
  952 F.3d 918 (8th Cir. 2020) ..................................................................... 34, 38

iv

*McKune v. Lile*,
   536 U.S. 24 (2002) ................................................................................................ 39
*Merz v. United States*,
   532 F. App'x 677 (9th Cir. 2013) ...................................................................... 18
*Moore v. City of New York*,
   219 F. Supp. 2d 335 (E.D.N.Y. 2002) ............................................................. 12
*Moore v. Vega*,
   371 F.3d 110 (2d Cir. 2004) ............................................................................... 35
*Morgan v. Shivers*,
   No. 14 Civ. 7921, 2018 WL 618451 (S.D.N.Y. Jan. 29, 2018) ................................. 24
*Morrison v. Nat'l Australia Bank Ltd.*,
   547 F.3d 167 (2d Cir. 2008) ................................................................................. 6
*Mullenix v. Luna*,
   577 U.S. 7 (2015) ............................................................................................... 35
*Munafo v. Metro. Transp. Auth.*,
   285 F.3d 201 (2d Cir. 2002) ............................................................................... 34
*Negron v. United States*,
   No. 19 Civ. 5442, 2020 WL 5634304 (S.D.N.Y. Sept. 21, 2020) ........................... 30
*Ojo v. United States*,
   No. 16 Civ. 4112, 2019 WL 3852391 (E.D.N.Y. Aug. 15, 2019) ............................ 18
*Ojo v. United States*,
   No. 16 Civ. 4112, 2020 WL 828076 (E.D.N.Y. Feb. 20, 2020) ............................. 11
*Oneil v. Rodriguez*,
   No. 18 Civ. 3287, 2020 WL 5820548 (E.D.N.Y. Sept. 30, 2020) ........................... 30
*Ortega v. U.S. Immigration and Customs Enforcement*,
   737 F.3d 435 (6th Cir. 2013) ............................................................................. 39
*Pearson v. Callahan*,
   555 U.S. 223 (2009) ........................................................................................... 33
*Pell v. Procunier*,
   417 U.S. 817 (1974) ........................................................................................... 38
*Petzold* v. *Rostollan*,
   946 F.3d 242 (5th Cir. 2019) ............................................................................. 32
*Reichle v. Howards*,
   566 U.S. 658 (2012) ..................................................................................... 23, 33
*Rheingold v. Harrison Town Police Dep't*,
   568 F. Supp. 2d 384 (S.D.N.Y. 2008) ............................................................. 13
*Robinson v. United States*,
   332 F. Supp. 3d 516 (E.D.N.Y. 2018) ............................................................. 10
*Rodriguez v. Easter*,
   No. 20 Civ. 1872, 2022 WL 356478 (D. Conn. Feb. 7, 2022) ................ 26, 28, 29, 30

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013) ........................................................................ 33, 34

*Sabir v. Williams*,
   No. 20 Civ. 0008, 2020 WL 3489522 (D. Conn. June 26, 2020) ................ 28, 29, 30

*Sabow v. United States*,
   93 F.3d 1445 (9th Cir. 1996) .......................................................................... 16

*Saint-Guillen v. United States*,
   657 F. Supp. 2d 376 (E.D.N.Y. 2009) ............................................................ 18

*Saleh v. United States*,
   No. 12 Civ. 4598, 2013 WL 5439140 (S.D.N.Y. Sept. 27, 2013) .................... 14

*Santiago v. United States*,
   No. 21 Civ. 436, 2022 WL 790805 (W.D. Va. Mar. 14, 2022) ...................... 18, 19

*Schwarz v. Meinberg*,
   761 F. App'x 732 (9th Cir. 2019) .................................................................... 26

*Sebolt v. United States*,
   769 F. App'x 381 (7th Cir. 2019) .................................................................... 18

*Silva v. Canarozzi*,
   No. 18 Civ. 1771, 2019 WL 1596346 (D. Conn. Apr. 15, 2019) ..................... 29

*Sloley v. VanBramer*,
   945 F.3d 30 (2d Cir. 2019) .......................................................................... 34, 38

*Smith v. Coughlin*,
   748 F.2d 783 (2d Cir. 1984) .......................................................................... 39

*Smith v. U.S. Coast Guard*,
   220 F. Supp. 2d 275 (S.D.N.Y. 2002) ............................................................ 17

*Tangreti v. Bachmann*,
   983 F.3d 609 (2d Cir. 2020) .................................................................. 34, 36, 37

*Tigano v. United States*,
   527 F. Supp. 3d 232 (E.D.N.Y. 2021) ............................................................. 8

*Turner v. Safley*,
   482 U.S. 78 (1987) ........................................................................................ 30

*United States v. Sherwood*,
   312 U.S. 584 (1941) ......................................................................................... 7

*United States v. Gaubert*,
   499 U.S. 315 (1991) ...................................................................................... 16

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense*,
   467 U.S. 797 (1984) ...................................................................................... 15

*United States v. Wilson*,
   No. 15 Cr. 256, 2021 WL 5360084 (W.D. Pa. Nov. 17, 2021)........................ 17

*Walker v. Schult*,
   717 F.3d 119 (2d Cir. 2013) .......................................................................... 36

*Wallace v. Kato*,
 549 U.S. 384 (2007) ................................................................................................ 10

*Weissich v. United States*,
 4 F.3d 810 (9th Cir. 1993) ..................................................................................... 19

*White v. Hess*,
 No. 14 Civ. 3339, 2020 WL 1536379 (E.D.N.Y. Mar. 31, 2020) ............... 26, 30, 32

*Whitley v. Albers*,
 475 U.S. 312 (1986) ................................................................................................ 19

*Widi v. Hudson*,
 No. 16 Civ. 1042, 2019 WL 3491250 (N.D.N.Y. Aug. 1, 2019) ........................ 28, 29

*Wiley v. Fernandez*,
 No. 19 Civ. 652, 2021 WL 6550821 (N.D.N.Y. Nov. 24, 2021) ............................. 28

*Wilkie v. Robbins*,
 551 U.S. 537 (2007) ................................................................................................ 28

*Zherka v. Ryan*,
 52 F. Supp. 3d 571 (S.D.N.Y. 2014) ....................................................................... 23

*Ziglar v. Abbasi*,
 137 S. Ct. 1843 (2017) ...................................................................................... passim

*Statutes:*

18 U.S.C. § 3621 ............................................................................................... passim
18 U.S.C. § 3624(c)(2) ............................................................................................ 10
18 U.S.C. § 4042(a) ........................................................................................... passim
18 U.S.C. § 4081 .................................................................................................... 17
28 U.S.C. § 1346 ............................................................................................... passim
28 U.S.C. § 2680(a) ........................................................................................... 2, 15
42 U.S.C. § 1997e(a) ............................................................................................. 30
Pub. L. No. 116-136, 134 Stat. 281 .......................................................................... 3

*Regulations:*

28 C.F.R. § 541.31 .................................................................................................. 16
28 C.F.R. § 542.10(a) ............................................................................................. 28
28 C.F.R. § 570.38(b)(1) ........................................................................................ 10

The Moving Defendants[1] respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Michael D. Cohen's ("Cohen") complaint against them pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Cohen brings this action against the United States and the seven Individual Moving Defendants pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). He seeks monetary damages for 16 days that he spent at a federal correctional institution, FCI Otisville, rather than on home confinement, while serving a 36-month sentence. He alleges that the Moving Defendants remanded him to FCI Otisville from a temporary furlough in retaliation for exercising his right to free speech by writing a book critical of former President Donald J. Trump and brings claims related to his conditions of confinement while incarcerated during those 16 days. He claims that the confinement conditions caused high blood pressure, headaches, shortness of breath, and anxiety. He brings seven causes of action relating to these allegations.

The Court should dismiss all of Cohen's claims. First, with respect to his FTCA claims, Cohen's First Amendment retaliation claim is not cognizable because there is no waiver of sovereign immunity with respect to constitutional claims pursuant to the FTCA. Second, Cohen's claim for false arrest, false imprisonment, and abuse of process and authority, as well as his

---

[1] The "Moving Defendants" refers to the United States of America (the "United States" or the "Government") and seven defendants in their individual capacities ("Individual Moving Defendants"): William Barr ("Barr"), former Attorney General of the United States; Michael Carvajal ("Carvajal"), Director of the Federal Bureau of Prisons ("BOP"); Jon Gustin ("Gustin"), Administrator of the Residential Reentry Management Branch of BOP; Patrick McFarland ("McFarland"), BOP Residential Reentry Manager; James Petrucci ("Petrucci"), Warden of the Federal Correctional Institution ("FCI") Otisville; Enid Febus ("Febus"), Supervisory Probation Officer, United States Probation and Pretrial Services ("Probation Office"); and Adam Pakula ("Pakula"), Probation Officer, Probation Office.

1

associated emotional distress claims, are also not cognizable.  With respect to the false arrest and imprisonment claims, Cohen cannot allege that his confinement was "not otherwise privileged" under New York law—as he is required to do—given that he was already legally confined pursuant to the judgment in his criminal case and already in the custody of the United States at the time that the alleged tortious actions occurred.  Similarly, Cohen cannot state a claim for abuse of process or authority given that the Government's transfer of Cohen to a different place of confinement did not involve any "legal process" as that term is understood by courts.  Moreover, even had Cohen stated claims for false arrest or imprisonment, abuse of process or authority, or infliction of emotional distress, his claims fail because there is no private analogue for his claims—a private person would not be held responsible for transferring a prisoner to a different place of confinement. Finally, the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), bars Cohen's claims that are premised on allegations of any negligence in remanding Cohen back to FCI Otisville; allegations relating to his conditions of confinement; and allegations concerning the Government's purported negligent hiring, training, retention, and supervision of its employees.

Cohen's *Bivens* claims against the Individual Moving Defendants should also be dismissed for two reasons.  First, "expanding the *Bivens* remedy is now a 'disfavored' judicial activity," *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)), and several special factors—including the availability of other remedies, extensive congressional action in the arena of prison administration, and the risk of intrusion by the Judiciary into matters of prison administration committed to the responsibility of the Attorney General and BOP—counsel against extending this remedy to the new contexts presented by Cohen's First, Fourth, and Eighth Amendment claims.  Second, even if the Court concludes that a *Bivens* remedy

should be extended into these new contexts, the Individual Moving Defendants are entitled to qualified immunity.

Accordingly, the Court should dismiss Cohen's complaint against the Moving Defendants.

## BACKGROUND

On May 6, 2019, Cohen began serving a 36-month sentence at FCI Otisville based on his nine felony convictions relating to tax evasion, false statements, and campaign finance crimes.  *See United States v. Cohen*, 18 Cr. 602 (WHP), ECF No. 29; *United States v. Cohen*, 18 Cr. 850 (WHP), ECF No. 16; ECF No. 1 ("Compl.") ¶¶ 4, 52-54.  Cohen's scheduled release date from FCI Otisville was November 22, 2021.  Compl. ¶ 63.

As alleged in Cohen's complaint, during his time at FCI Otisville, Cohen began drafting a book regarding former President Trump, which Cohen publicly discussed.  *Id.* ¶¶ 55-61.  Cohen alleges that in April 2020, he submitted a request to BOP under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020), requesting that he be placed on furlough and then home confinement due to his medical condition, and that BOP approved the request.  Compl. ¶¶ 6, 66-69.[2]  Cohen further alleges that after spending 35 days in solitary confinement for purposes of quarantine, BOP placed him on furlough in May 2020.  *Id.* ¶¶ 70-71.  Cohen states that during the furlough period he "made various public statements demonstrating his intent to publish a tell-all book about President Trump in short order."  *Id.* ¶¶ 7, 72.

According to Cohen, on July 9, 2020, he and his counsel met with Defendant Probation Officers Pakula and Febus, as well as other federal officers, at the U.S. District Courthouse to review his home confinement transition paperwork.  *Id.* ¶¶ 15, 73, 95.  Cohen claims that Pakula

---

[2] For background regarding the process for placing an inmate on home confinement under the CARES Act, *see Cohen v. Barr*, 20 Civ. 5614 (AKH), Gustin Decl. (ECF No. 24).

and Febus presented him with a Federal Location Monitoring Program agreement ("FLM agreement") that he was required to sign to transition to home confinement. *Id.* ¶¶ 17, 74. Cohen alleges that the first condition of the agreement contained a clause that forbade him from having any engagement with the media, including from publishing his book, which he claims violated his First Amendment rights. *Id.* ¶¶ 18-20, 75. Cohen further alleges that because the clause violated his First Amendments rights, he sought clarification and potential revision of it. *Id.* ¶¶ 21, 76-79. According to Cohen, Pakula and Febus agreed to "run [his concerns] up the chain of command." *Id.* ¶¶ 80-86. Cohen states that these Defendants never asked him to sign the FLM agreement, nor did he refuse to sign it. *Id.* ¶¶ 87, 97. According to Cohen, after waiting 1.5 hours while the officers conferred, three U.S. Marshals served Cohen's counsel with a remand ordered by Defendant McFarland, which stated that BOP would remand Cohen because he failed to agree to the terms of the FLM agreement. *Id.* ¶ 91.

BOP remanded Cohen to FCI Otisville to serve the remainder of his sentence, which he claims placed his life in danger due to the COVID-19 pandemic. *Id.* ¶¶ 21-25. Cohen alleges that BOP initially placed him in the "special segregated housing unit" before transferring him to "solitary confinement" where he spent 16 days. *Id.* ¶¶ 27, 99-100. Cohen alleges that he spent all but 30 minutes alone in a twelve-by-eight-foot cell and was only permitted to leave his cell for 30 minutes. *Id.* ¶ 101. He also complained that his cell had "poor ventilation," "no air conditioning," and temperatures that exceeded 100 degrees. *Id.* ¶ 102. Cohen claims that the conditions posed "serious health risks" for him, noting that "[a]t times his blood pressure became dangerously high resulting in severe headaches, shortness of breath, and anxiety requiring immediate attention." *Id.*

On July 20, 2020, Cohen filed a habeas action seeking his release from FCI Otisville, alleging that the Government had remanded him in violation of his First Amendment rights. *See*

*Cohen v. Barr*, 20 Civ. 5614 (AKH).  In that action, the United States submitted declarations from probation and prison officers explaining that the FLM agreement, including the media restriction, was drafted by the probation officer "without input from the BOP or anyone in the executive branch," Pakula Decl. (*id.* at ECF No. 23) ¶ 11[3]; that Cohen's "failure to agree to this particular condition played no role whatsoever in" the relevant BOP official's "decision to remand him to secure custody," Gustin Decl. (*id.* at ECF No. 24) ¶ 27; and that "Cohen was placed in the quarantine unit, as are all new inmates, for the protection of the prison's inmate population," Johnson Decl. (*id.* at ECF No. 25) ¶ 5.  On July 23, 2020, U.S. District Judge Alvin K. Hellerstein preliminarily granted Cohen's motion for injunctive relief and ordered his transfer from FCI Otisville to home confinement, concluding that the Government's "purpose in transferring Cohen from release on furlough and home confinement back to custody was retaliatory in response to Cohen desiring to exercise his First Amendment rights to publish a book critical of the President and to discuss the book on social media."  *Id.* at ECF No. 30 (Order); Compl. ¶ 28.  BOP released Cohen the next day, on July 24, 2020.  20 Civ. 5614, ECF No. 32 ¶ 1.  On July 30, 2020, the parties stipulated that the injunction would be permanent and to dismiss the matter; Judge Hellerstein so ordered the stipulation on January 26, 2021.  *Id.* at ECF No. 36.

Cohen filed the instant FTCA and *Bivens* action on December 16, 2021, against the United States, the Individual Moving Defendants, and the former President.  ECF No. 1 ("Compl.").  He alleged that he "was retaliated against by the defendants for the lawful exercise of his First Amendment right to free speech, in relation to his public comments and upcoming publication of

---

[3] The probation officer also explained that he drafted the media restriction based on a largely identical restriction contained in a prior agreement he had received from another probation officer several months earlier.  Pakula Decl. ¶¶ 5-13.  The Probation Office does not have a general policy of including such restrictions in FLM agreements.

a book shortly before the 2020 election, critical of the former President of the United States, Donald J. Trump."  Compl. ¶ 2.

Cohen brings six causes of action against the United States under the FTCA: (1) retaliation for "exercising his right to free speech in falsifying the FLM agreement and remanding him back to FCI Otisville for 16 days (*id.* ¶¶ 111-14); (2) false arrest, false imprisonment, abuse of authority and process "in retaliation for the lawful exercise of his First Amendment rights" (*id.* ¶¶ 115-21); (3) negligent failure to protect for breaching a duty to protect "in negligently operating and managing FCI Otisville" (*id.* ¶¶ 122-24); (4) negligent infliction of emotional distress "by retaliat[ing] against [him] by remanding him back to FCI Otisville, placing him in solitary confinement for approximately 16 days, and significantly increasing his risk of contracting COVID-19" (*id.* ¶¶ 125-29); (5) intentional infliction of emotional distress for the same conduct (*id.* ¶¶ 130-34); and (6) negligent hiring, retention, training, and supervision with respect to "negligently operating and managing FCI Otisville" (*id.* ¶¶ 135-38).  Cohen's seventh cause of action asserts *Bivens* claims against the Individual Moving Defendants based on alleged violations of his First, Fourth, and Eighth Amendment rights relating to his allegedly retaliatory remand to FCI Otisville and the conditions there.  *Id.* ¶¶ 139-42.

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(1), a plaintiff must establish the court's jurisdiction through sufficient allegations.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).  "[A] claim is properly dismissed . . . under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted).  "The United States, as sovereign, is immune from suit save as it

consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Sherwood*, 312 U.S. 584, 586 (1941). "Any waiver of the government's sovereign immunity is to be strictly construed in favor of the government." *Long Island Radio Co. v. NLRB*, 841 F.2d 474, 477 (2d Cir. 1988).

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true the well-pleaded factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). That said, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "A court can thus begin its analysis of the sufficiency of pleadings by 'identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Aguilar v. Immigration & Customs Enf't Div.*, 811 F. Supp. 2d 803, 807 (S.D.N.Y. 2011) (quoting *Iqbal*, 556 U.S. at 679). If well-pleaded factual allegations exist, the court must then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679.

**ARGUMENT**

**I.      The Court Should Dismiss Cohen's FTCA Claims**

The FTCA, 28 U.S.C. § 1346(b), grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994) (citation omitted). This category includes "claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). As explained below, Cohen has failed to

state any legally cognizable FTCA claims, and the Court lacks jurisdiction over some of the claims.

## A. Cohen's First Amendment Retaliation Claim Is Not Cognizable Under the FTCA

Cohen's first cause of action alleging that the Government retaliated against him for "exercising of his right to free speech" (Compl. ¶¶ 111-14) is based on an alleged First Amendment constitutional violation. *See, e.g.*, *Bacon v. Phelps*, 961 F.3d 533, 542 (2d Cir. 2020). Constitutional violations are not cognizable under the FTCA.

To be cognizable under § 1346(b), a claim must allege that "the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). A constitutional tort claim, like Cohen's, "could not contain such an allegation." *See Meyer*, 510 U.S. at 477-78. Section 1346(b)'s "reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA," and "[b]y definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right." *Id.* at 478 (citations omitted).

For this reason, a plaintiff cannot bring a federal constitutional tort claim, like Cohen's, under the FTCA. *See id.*; *Hernandez v. United States*, 939 F.3d 191, 205 (2d Cir. 2019) ("The FTCA 'has not waived [the Government's] sovereign immunity with respect to claims that its employees have committed constitutional torts' under the federal constitution." (citation omitted; alteration in original)); *Tigano v. United States*, 527 F. Supp. 3d 232, 254 (E.D.N.Y. 2021) (similar); *see also, e.g.*, *Lopez v. United States*, 656 F. App'x 957, 966 (11th Cir. 2016) ("claim of First Amendment retaliation is not cognizable under the FTCA" (citing *Meyer*, 510 U.S. at 477-78)). Nor would such a claim be viable under the FTCA if it was based on a violation of the New York state constitution. *See, e.g.*, *Hernandez*, 939 F.3d at 205 ("[S]everal district courts in his circuit have held that plaintiffs cannot assert FTCA claims for violations of the New York

Constitution.  We agree with this conclusion." (citations omitted)).  Accordingly, the Court should dismiss Cohen's first cause of action.

**B. Cohen Has Failed to State a Legally Cognizable Claim for False Arrest, False Imprisonment, and Abuse of Authority and Process, or Resulting Emotional Distress, and the Court Lacks Jurisdiction Over These Claims**

In his second cause of action, Cohen alleges that he was unlawfully arrested and imprisoned for approximately 16 days by employees of the United States in retaliation for exercise of his First Amendment rights.  Compl. ¶¶ 115-21.  Specifically, Cohen alleges that he was remanded to FCI Otisville in July 2020 from temporary furlough rather than placed on home confinement as originally planned in retaliation for a book that he was writing that would be critical of the former President.  *Id.* ¶¶ 2-29, 48-103.  The Court should dismiss Cohen's second cause of action, and the resulting emotional distress claims asserted in his fourth and fifth causes of action (*id.* ¶¶ 125-34), because Cohen has failed to state a claim, and the Court lacks subject matter jurisdiction over these claims.

First, Cohen cannot meet the threshold showing required for a false arrest or false imprisonment claim.  To prove the elements of a false arrest or false imprisonment claim under New York law, a plaintiff must show that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  *Hernandez*, 939 F.3d at 199 (citations and internal quotation marks omitted).  Cohen cannot satisfy these elements because he cannot as a matter of law allege that his confinement "was not otherwise privileged."  A detention by a federal officer is privileged if it was proper under federal law.  *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012).  "For purposes of the privilege element of a false arrest and imprisonment claim, an act of confinement is privileged if it stems from a lawful arrest supported by probable cause."

*Hernandez*, 939 F.3d at 199 (citation omitted).  "In other words, 'false imprisonment ends once the victim becomes held pursuant to [legal] process.'" *Robinson v. United States*, 332 F. Supp. 3d 516, 527 (E.D.N.Y. 2018) (quoting *Wallace v. Kato*, 549 U.S. 384, 389 (2007); alteration in *Robinson*).

In December 2018, U.S. District Judge William H. Pauley III sentenced Cohen to 36 months of incarceration—a sentence that Cohen began serving at FCI Otisville in May 2019 and which was to end on November 22, 2021.  *See* Compl. ¶¶ 52-54, 63; 18 Cr. 602, ECF Nos. 29, 39.  Although BOP granted Cohen temporary release on furlough in April 2020, before his planned transfer to home confinement under the CARES Act (Compl. ¶¶ 66-73), while on furlough Cohen "[r]emain[ed] in the legal custody of the U.S. Attorney General, in service of a term of imprisonment." 28 C.F.R. § 570.38(b)(1).  Moreover, although BOP had not yet placed Cohen on home confinement, individuals placed on home confinement remain within the custody of BOP.  *See* 18 U.S.C. § 3624(c)(2) (listing "home confinement" as a type of "[p]rerelease custody"); *see also, e.g.*, *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 431 (D. Conn. 2020) (individuals "in home confinement, [] would remain within the 'custody' of the BOP").  Given that Cohen was already in custody serving a term of imprisonment pursuant to the judgment in his criminal case, his confinement—whether on home confinement or at FCI Otisville—was legally permitted by the judgment in his criminal case and therefore privileged.  *Cf.* 18 U.S.C. § 3621(b) (BOP "shall designate the place of the prisoner's imprisonment," and this designation "is not reviewable by any court").  Cohen's allegations about being remanded to FCI Otisville are essentially complaints about the conditions of his confinement rather than the fact of his confinement, which are not recognized under the tort of false imprisonment.

The district court's decision in *McGowan v. United States*, 94 F. Supp. 3d 382 (E.D.N.Y.

2015), is instructive on this issue.  There, the plaintiff alleged that he was falsely arrested and imprisoned when BOP remanded him from a halfway house to the Metropolitan Detention Center ("MDC") in retaliation for exercising his First Amendment right to publish an article on the internet with his byline.  *Id.* at 384-85.  In dismissing the plaintiff's claim, the district court concluded: "Plaintiff's confinement was uncategorically privileged because he was a convicted felon serving his sentence. . . . His custody was the product of a judgment of conviction of a United States District Court that remanded him to the BOP."  *Id.* at 390.  The court rejected as "facetious" the plaintiff's argument that he had a viable claim for false imprisonment because he had more freedom at the halfway house than at MDC and concluded that the plaintiff was actually complaining about his conditions of confinement rather than the fact of confinement—a complaint that was not recognized under the tort of false imprisonment.  *Id.* at 391.  The court observed: "If a private or state actor is entitled to hold a prisoner, liability for false imprisonment never rises or falls based on the conditions under which he is held. . . . The inquiry ends, at least for purposes of the tort of false imprisonment, upon the finding that some form—any form—of confinement was legally permitted."  *Id.* at 391;[4] *see also Akran v. United States*, 997 F. Supp. 2d 197, 204-06 (E.D.N.Y. 2014) (dismissing false imprisonment clam as privileged), *aff'd*, 581 F. App'x 46 (2d Cir. 2014); *Ojo v. United States*, No. 16 Civ. 4112, 2020 WL 828076, at *10-11 (E.D.N.Y. Feb. 20, 2020) (similar).  Thus, Cohen cannot state a claim for false arrest or imprisonment given that

---

[4] The Second Circuit affirmed the district court's decision in *McGowan*.  *See McGowan v. United States*, 825 F.3d 118 (2d Cir. 2016).  However, the panel determined that plaintiff had abandoned his challenge to the district court's conclusion "as it applies to ordinary claims of false imprisonment."  *Id.* at 126 n.4.  Instead, the plaintiff argued on appeal that he should be able to pursue a claim under the FTCA for "wrongful confinement," a "species of false imprisonment"— an argument that the Second Circuit rejected on the basis that there was no private analogue as required by § 1346(b)(1).  *See id.* at 126-27.

his confinement was legally permitted throughout the duration of his sentence.

For similar reasons, Cohen has also failed to state a claim for abuse of process or authority.[5] To prove abuse of process under New York law, a plaintiff must show that the defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Hernandez*, 939 F.3d at 204 (citation and internal quotation marks omitted); *Bd. of Ed. v. Farmingdale Classroom Tchrs. Ass'n, Inc.*, 38 N.Y.2d 397, 403 (1975) (similar).  "[L]egal process means that a court issued the process." *Fernandez v. City of New York*, 457 F. Supp. 3d 364, 388 (S.D.N.Y. 2020) (quoting *Cook v. Sheldon,* 41 F .3d 73, 80 (2d Cir. 1994)).  Cohen cannot meet this standard.  As noted, Cohen was already serving a term of imprisonment as part of a court-ordered sentence.  As such, the Government did not employ any legal process in remanding Cohen to FCI Otisville as BOP had sole discretion over the place of Cohen's confinement.  *See* 18 U.S.C. § 3621(b).  Therefore, Cohen has also failed to state a claim for abuse of process.

Cohen's emotional distress claims relating to alleged false arrest and imprisonment and abuse of process are also not cognizable.  Given that the conduct of which Cohen complains with respect to intentional infliction of emotional distress is encompassed within Cohen's claims for false arrest and imprisonment and abuse of process, the Court should dismiss Cohen's intentional infliction of emotion distress claim.  *See, e.g.*, *Moore v. City of New York*, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) ("No intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability." (citation omitted)).

---

[5] Given that the law does not appear to recognize a separate claim for abuse of authority, the Government will hereinafter refer to the claim as one for abuse of process.

Similarly, Cohen cannot recover under negligence principles for the conduct he alleges. *See, e.g.,* *Rheingold v. Harrison Town Police Dep't*, 568 F. Supp. 2d 384, 395 n.3 (S.D.N.Y. 2008) ("To the extent that plaintiff is alleging an alternate theory of liability for false arrest, imprisonment and prosecution sounding in negligence, New York does not provide a cause of action under such a theory.").

Finally, even had Cohen otherwise stated a claim for false arrest and imprisonment and abuse of process, his claim fails—as do his incidental emotional distress claims (Compl. ¶¶ 125-34)—because Cohen's allegations do not satisfy the private analogue requirement of the FTCA. *See* 28 U.S.C. § 1346(b)(1). "[F]or liability to arise under the FTCA, a plaintiff's cause of action must be comparable to a cause of action against a private citizen recognized in the jurisdiction where the tort occurred." *McGowan*, 825 F.3d at 125 (citations and internal quotation marks omitted). "This 'private analogue' requirement asks whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred." *Id.* (citations and internal quotation marks omitted). Here, there is no private tort analogue, as required to state an FTCA claim, *see* 28 U.S.C. § 1346(b)(1), for BOP's use of its discretion in transferring a prisoner to a different place of confinement as private persons do not have the discretion to decide whether an individual should be detained on home confinement or in prison. *See, e.g.*, *McGowan*, 825 F.3d at 126-27 (no private analogue for tort of wrongful confinement where plaintiff complained of being detained in prison rather than halfway house); *see also, e.g.*, *Akutowicz v. United States*, 859 F.2d 1122, 1125 (2d Cir. 1988) (no private analogue for wrongful revocation of citizenship); *Buzzanca v. District of Columbia*, 523 F. Supp. 3d 64, 69-72 (D.D.C. 2021) (no private analogue for negligent and intentional infliction of emotional distress claims based on wrongful confinement due to BOP's allegedly incorrect calculation of a release date); *see also,*

*e.g.*, *Carter v. United States*, 494 F. App'x 148, 149 (2d Cir. 2012) (district court erred in concluding claim alleging emotional distress resulting from attempt to execute arrest warrant based on negligently provided information had private analogue); *Saleh v. United States*, No. 12 Civ. 4598, 2013 WL 5439140, at *9-10 (S.D.N.Y. Sept. 27, 2013) (no private analogue for USCIS's denial of a green card or FBI's pressure on plaintiff to become an informant), *aff'd*, 580 F. App'x 22 (2d Cir. 2014).[6]  Thus, the Court does not have jurisdiction over these claims due to the lack of a private analogue.  *See, e.g.*, *McGowan*, 825 F.3d at 121, 127-28.

Accordingly, the Court should dismiss Cohen's second, fourth, and fifth causes of action.

## C. The FTCA's Discretionary Function Exception Bars Cohen's Claims for Failure to Protect, Negligent Infliction of Emotional Distress, and Negligent Hiring, Retention, Training, and Supervision

Cohen's third cause of action—for negligent failure to protect—alleges that the Government breached a duty to protect him "in negligently operating and managing FCI Otisville." Compl. ¶¶ 122-24.  Cohen's fourth cause of action for negligent infliction of emotional distress alleges distress based on his remand to FCI Otisville and the 16 days that he allegedly spent in "solitary confinement," which Cohen claims significantly increased his risk of contracting COVID-19.  *Id.* ¶¶ 125-134.  Specifically, with respect to both causes of action, Cohen alleges that for the 16 days he spent at FCI Otisville in July 2020 following his remand, his cell was poorly ventilated and hot, and he was only permitted to leave it for 30 minutes a day.  *Id.* ¶¶ 99-102.[7]  In

---

[6] *Liranzo*, 690 F.3d at 94-97, which held that illegal detention by ICE could be actionable under the FTCA, is not to the contrary.  *Liranzo* involved a standard claim of false imprisonment in which the plaintiff alleged he should not have been placed in any type of custody.  *Id.* at 82-84. By contrast, here, Cohen merely alleges that he should have been placed in a different location of confinement, so there is no analogous private conduct.

[7] Although Cohen alleges that prior to his transfer to furlough in May 2020, BOP kept him in solitary confinement at FCI Otisville for 35 days, Cohen does not appear to bring any FTCA claims relating to these factual allegations, and he even alleges that his "incarceration, prior to his

his sixth cause of action, Cohen vaguely alleges that FCI Otisville negligently hired, retained, trained, and supervised its employees. *Id.* ¶¶ 135-38. Cohen's third, fourth, and sixth causes of action are barred by the discretionary function exception to the FTCA.

The FTCA exempts from its waiver of sovereign immunity any claim that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). A court lacks subject matter jurisdiction over any claim falling within the discretionary function exception. *See Fazi v. United States*, 935 F.2d 535, 537 (2d Cir. 1991). "The discretionary function exception . . . marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 808 (1984).

A claim falls within the discretionary function exception if it satisfies a two-part test: (1) the challenged conduct "involve[s] an element of judgment or choice" in that it is "not compelled by statute or regulation"; and (2) the "choice in question" is "grounded in considerations of public policy or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (internal quotation marks omitted). Cohen's claims relating to prison operation and management, including placement of prisoners, cell conditions, and hiring, retention, training, and supervision, fall within the discretionary function exception's ambit.

---

unlawful remand, was uneventful." Compl. ¶¶ 62, 71, 112, 119, 126, 131. However, to the extent Cohen is attempting to state any claim with respect to the 35 days he allegedly spent in "solitary confinement" in April to May 2020, such claims are also barred by the discretionary function exception for the reasons described in this section.

First, BOP's prison operation and management is not compelled by statute or regulation. Although statutes, regulations, and guidelines guide operation and management of BOP's facilities, they do so in a manner that leaves BOP officials with "an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quotation marks omitted); *see also, e.g.*, *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 546 (1988) (where policies "allow room for implementing officials to make independent policy judgments, the discretionary function exception protects the acts taken by those officials in the exercise of this discretion").

For example, 18 U.S.C. § 4042(a) gives BOP, under the direction of the Attorney General, "charge of the management and regulation of all Federal penal and correctional institutions" and tasks BOP to "provide suitable quarters and provide for the safekeeping, care and subsistence" of federal inmates, as well as to "provide for the[ir] protection." Such broad statutory language leaves much room for the exercise of discretion by implementing officials. *See, e.g.*, *Matthias v. United States*, 475 F. Supp. 3d 125, 141 (E.D.N.Y. 2020) (where regulations "do not lay out specific means" for accomplishing an objective, but instead leave implementation "up to the discretion" of an entity, the entity's actions are not compelled by regulation). Similarly, 28 C.F.R. § 541.31 applies to conditions in the special housing unit ("SHU") and requires "healthy and humane treatment," including living quarters that are "well-ventilated, adequately lighted, appropriately heated, and maintained in a sanitary condition." However, because the regulation does not specify the meaning of these terms, it leaves much discretion to BOP.[8] *Cf. Sabow v. United States*, 93 F.3d 1445, 1453 (9th Cir. 1996) (as amended) ("[T]he presence of a few, isolated provisions cast in mandatory language does not transform an otherwise suggestive set of guidelines into binding

---

[8] In any event, Cohen remained in the SHU for less than 24 hours. *See* 20 Civ. 5614, Johnson Decl. (ECF No. 25) ¶ 5; Compl. ¶¶ 99-100.

agency regulations." (citation omitted)); *Smith v. U.S. Coast Guard*, 220 F. Supp. 2d 275, 281 (S.D.N.Y. 2002) (applying the discretionary function exception where regulatory standards were "highly detailed" but did not require ship inspectors "to take specific steps" and did "not specify the means by which the Coast Guard inspector [was] to determine compliance").  Further, 18 U.S.C. § 4081, which pertains to the classification and treatment of prisoners, provides BOP with broad discretion regarding such classification and treatment.  Additionally, 18 U.S.C. § 3621 gives BOP significant discretion regarding the placement of prisoners and makes BOP's decisions regarding designation of a place of imprisonment unreviewable by any court.

Finally, during the relevant time period, BOP had modified operation protocols in place due to the COVID-19 pandemic, including adopting quarantine and isolation procedures (such as on intake and release), restricting movement of individuals within and between facilities, staggering meals and recreation times to limit large gatherings, suspending non-essential visits, requiring screening of individuals entering or residing in a BOP facility, providing face coverings, and increasing hygiene and sanitation.  *See* Johnson Decl. (ECF No. 25) ¶¶ 4-7; https://www.bop.gov/coronavirus/overview.jsp.  Pursuant to these protocols, in July 2020, BOP generally quarantined individuals entering incarceration for approximately 14 days, during which time it significantly restricted their movement; at the end of this period, if the individual tested negative, he would enter the general population.  *See* Johnson Decl. ¶ 4.  These COVID-19 protocols left BOP with elements of discretion, particularly given the fluid nature of the pandemic. *See, e.g.*, *United States v. Wilson*, No. 15 Cr. 256, 2021 WL 5360084, at *1 (W.D. Pa. Nov. 17, 2021) (BOP's COVID-19 protocols "are within the discretion of BOP and their determination of relative risk levels given the changing nature of the pandemic and the availability of vaccines").

For this reason, courts have typically held that BOP's operation and management of its

facilities, including its placement of prisoners and the decisions it makes regarding hiring, retention, training, and supervision, are not "compelled by statute or regulation." *Coulthurst*, 214 F.3d at 109; *see also, e.g.*, *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998) ("even if § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception" and §§ 3621 and 4081 "do not mandate a specific, non-discretionary course of conduct for the BOP to follow," but "[i]nstead, they give the BOP ample room for judgment"); *Sebolt v. United States*, 769 F. App'x 381, 382-83 (7th Cir. 2019) (discretionary function exception applied to placement of inmate in SHU); *Merz v. United States*, 532 F. App'x 677, 678 (9th Cir. 2013) (discretionary function exception applied to decisions regarding where to place incarcerated individual and the manner and timing of provision of clothing, bedding, and toiletries ); *Santiago v. United States*, No. 21 Civ. 436, 2022 WL 790805, at *2-3 (W.D. Va. Mar. 14, 2022) ("BOP's handling of COVID-19 and the protective measures it put into place involved an element of judgment or choice," and claims relating to BOP's COVID-19 procedures were barred by discretionary function exception); *Ojo v. United States*, No. 16 Civ. 4112, 2019 WL 3852391, at *8-9 (E.D.N.Y. Aug. 15, 2019) (dismissing negligence claims, including relating to training and supervision, and emotional distress claims arising from plaintiff's placement in SHU as barred by discretionary function exception), *report and recommendation adopted*, 2019 WL 4602823 (E.D.N.Y. Sept. 23, 2019); *Saint-Guillen v. United States*, 657 F. Supp. 2d 376, 387 (E.D.N.Y. 2009) ("[F]ederal courts have found that such hiring, training, and supervision decisions generally fall within the exception.").

Second, decisions regarding prison management and operations—including placement and housing of prisoners and hiring, retention, training, and supervision matters—are grounded in

considerations of public policy and susceptible to policy analysis.  As the Supreme Court has recognized, "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986); *see also, e.g.*, *Dykstra v. U.S. Bureau of Prisons,* 140 F.3d 791, 796 (8th Cir. 1998) ("Prison officials supervise inmates based upon security levels, available resources, classification of inmates, and other factors. These factors upon which prison officials base such decisions are inherently grounded in social, political, and economic policy."); *Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995) (BOP's "approval of transfer of inmates to halfway houses is entwined with the social considerations of integrating prisoners into society," and "[a] pre-release program, like placement in a halfway house, also alleviates the cost of keeping inmates in prison"); *Weissich v. United States*, 4 F.3d 810, 814 (9th Cir. 1993) (supervision of probationer subject to policy considerations).

Indeed, in the context of the COVID-19 pandemic, prison management and operations require a particularly delicate balancing of prisoner and staff safety with available resources to implement emergency medical guidance in a programmatic way at each BOP facility.  *See, e.g.*, *Santiago*, 2022 WL 790805, at *3 ("[T]he development and implementation of safety protocols in federal prisons is unquestionably based on considerations of public policy. . . . The BOP must balance its duty to protect inmates from COVID-19 with its duty to protect inmates from each other, to safeguard staff, and to protect the public."); *see also, e.g.*, *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) ("Inherent in such placement and transfer decisions are considerations of public policy such as concerns with security, cost, overcrowding, medical care, and the suitability of each facility to meet the needs of the prisoner."); *Dugan v. Warden, FCC*

*Coleman-USP I*, 673 F. App'x 940, 943 (11th Cir. 2016) ("[I]n the case of a prison lockdown, prison staff must necessarily balance competing policy concerns, including inmate and staff safety, efficient supervision of inmates, and allocation of resources.").

Finally, matters of hiring, retention, training, and supervision involve the exercise of political, social, and economic policy judgment because they include consideration of such factors as budgetary constraints, public safety, economic conditions, individual backgrounds, office diversity, the complexity of the task involved, the degree of harm a wayward employee might cause, and the extent to which employees have deviated from accepted norms in the past. *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997).

Accordingly, Cohen's claims relating to any alleged negligent remand to FCI Otisville, his cell placement at FCI Otisville, and alleged negligent hiring, retention, training, and supervision are barred by the discretionary function exception to the FTCA.

## II.   The Court Should Dismiss Cohen's *Bivens* Claims

Cohen's complaint also asserts a cause of action against the Individual Moving Defendants pursuant to *Bivens* based on alleged violations of his First, Fourth, and Eighth Amendment rights. *See* Compl. ¶¶ 139-42 (seventh cause of action).  Specifically, Cohen alleges a violation of the First Amendment based on his remand to FCI Otisville allegedly in retaliation for writing a book critical of the former President (*id.* ¶¶ 72–99); a violation of the Fourth Amendment based on his remand to FCI Otisville (*id.* ¶¶ 73-98); and a violation of the Eighth Amendment based on his conditions of confinement during his 16 days at FCI Otisville following remand (*id.* ¶¶ 99-102). The Court should dismiss Cohen's *Bivens* cause of action because a *Bivens* remedy is not available for the constitutional violations he alleges.  Further, even if a *Bivens* remedy were available, the Individual Moving Defendants would be entitled to qualified immunity.

20

### A. Legal Framework

In *Bivens*, the Supreme Court for the first time recognized a damages remedy to compensate an individual injured by federal officers who violated his constitutional rights—there, a man who alleged that he was unconstitutionally searched and arrested in his home by the Federal Bureau of Narcotics in violation of the Fourth Amendment's prohibition against unreasonable search and seizure. *See Bivens*, 403 U.S. at 389; *see also Iqbal*, 556 U.S. at 675. Since *Bivens*, the Supreme Court has implied a constitutional damages remedy on only two other occasions: to redress an alleged Fifth Amendment equal protection violation by a United States Congressman who admitted to terminating an employee because she was a woman, *see Davis v. Passman*, 442 U.S. 228, 230 (1979); and to redress an alleged Eighth Amendment violation by prison officials whose alleged deliberate indifference to an inmate's asthma led to his death, *see Carlson v. Green*, 446 U.S. 14, 16-18 (1980). *See also Abbasi*, 137 S. Ct. at 1855 ("These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.").

In the years since these cases were decided, the Supreme Court's "approach to recognizing implied causes of action" has "notabl[y] change[d]," largely in recognition of the separation of powers concerns inherent in a court "creat[ing] and enforc[ing] a cause of action for damages against federal officials in order to remedy a constitutional violation." *Id.* at 1856-57. "In most instances, the Court's precedents now instruct, [Congress] is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." *Id.* at 1857 (citations and internal quotation marks omitted). Accordingly, as the Court has made clear on multiple occasions, "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (quoting *Iqbal*, 556 U.S. at 675).

To safeguard separation of powers principles, the Supreme Court in *Abbasi* set forth a rigorous two-part test for determining whether a *Bivens* remedy should be implied in a given case. Under this test, a court must first consider whether a claim "presents a new *Bivens* context." *Id.* at 1859.  This step requires a court to ask whether the case "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Id.*  Meaningful differences include, but are not limited to,

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.  "[T]he new-context inquiry is easily satisfied" by even "small" but "meaningful" differences between the claim at issue and the Supreme Court's previously approved *Bivens* claims.  *See id.* at 1865.  Indeed, "even a modest extension" of the circumstances presented in *Bivens*, *Davis*, or *Carlson* "is still an extension." *Id.* at 1864.

If a case presents a new context, a court must then evaluate whether "there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* at 1857 (quoting *Carlson*, 446 U.S. at 18).  If there are such special factors, a *Bivens* remedy will not be available. *Id.*  This step requires a court to consider if there is "an alternative remedial structure present in a certain case" or other special factors indicating that the judiciary is not "well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1858.  In other words, "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong," the Court "must refrain from creating the remedy in

order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." *Id.*  As the Second Circuit has held, the threshold for whether a factor counsels hesitation "is remarkably low"—"[h]esitation' is 'counseled' whenever thoughtful discretion would pause even to consider."  *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009).

Applying this framework to the constitutional claims asserted in Cohen's complaint demonstrates that, in each instance, a *Bivens* remedy is not available to Cohen.

### B. Cohen's Claims Present a New *Bivens* Context

Because Cohen's First, Fourth, and Eighth Amendment claims differ in meaningful ways from the claims presented in *Bivens*, *Davis*, and *Carlson*, the Court should conclude that Cohen's claims present a new context.

Cohen's First Amendment retaliation claim indisputably arises in a new context.  As discussed above, *Bivens*, *Davis*, and *Carlson* "represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself," *Abbasi*, 137 S. Ct. at 1855, and in none of these cases did the Supreme Court recognize a remedy for a First Amendment *Bivens* claim.  Indeed, as the Supreme Court has often reiterated, it has *never* recognized a First Amendment *Bivens* claim in *any* context.  *See, e.g., Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims.").  Likewise, the Second Circuit has never "recognized a *Bivens* action sounding in the First Amendment."  *Zherka v. Ryan*, 52 F. Supp. 3d 571, 579 (S.D.N.Y. 2014).  For this reason alone, Cohen's First Amendment claim necessarily presents a new context.

Cohen's Fourth and Eighth Amendment claims similarly arise in a new context.  Though the Supreme Court previously recognized a damages remedy for asserted violations of the Fourth and Eighth Amendments in *Bivens* and *Carlson* respectively, a "claim may arise in a new context

even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). As stated in *Hernandez*, "once we look beyond the constitutional provisions invoked in *Bivens*, [*Carlson*], and the present case, it is glaringly obvious that [the plaintiff's] claims involve a new context, *i.e.*, one that is meaningfully different." *Id.* The same is true here.

With respect to Cohen's asserted Fourth Amendment violation, multiple factors discussed by the Supreme Court in *Abbasi* render the context presented here meaningfully different from that presented in *Bivens*. *Bivens* involved an individual who alleged that agents of the Federal Bureau of Narcotics entered his apartment, arrested him in front of his family, threatened to arrest his family too, and searched his apartment from top to bottom, all without a warrant or probable cause to arrest. *See Bivens*, 403 U.S. at 389. By contrast, Cohen—who was already in federal custody serving his criminal sentence—bases his Fourth Amendment claim on his allegations that BOP seized and remanded him from furlough to FCI Otisville rather than allowing him to serve the remainder of his sentence on home confinement after he objected to the terms of the FLM agreement. *See* Compl. ¶¶ 73–98.

Further, unlike the agents in *Bivens*, the Government officials here were not performing ordinary law-enforcement functions; rather, they were implementing a BOP remand order to return to FCI Otisville a convicted federal prisoner already in custody. As such, the Government officials were performing a very "specific" official action, distinct from the "general" law-enforcement functions performed by the agents in *Bivens*, and they were operating under an entirely different "statutory or other legal mandate" than the agents in *Bivens*. *See Abbasi*, 137 S. Ct. at 1860; *see also Morgan v. Shivers*, No. 14 Civ. 7921, 2018 WL 618451, at *5 (S.D.N.Y. Jan. 29, 2018) (finding meaningful difference from *Bivens* where an alleged unconstitutional search was

conducted by corrections officers, not narcotics agents, and took place in the context of a prison because "the Supreme Court has long distinguished its analysis of the Fourth Amendment when raised in the context of a prison facility").

Moreover, the "specific" action they performed—remanding Cohen to federal prison rather than transitioning him from furlough to home confinement—implemented a BOP decision regarding where Cohen should be housed.  Congress has delegated broad authority to BOP to make decisions regarding inmate housing—even going as far as to provide that BOP's "designation of a place of imprisonment . . . is not reviewable by any court."  *See, e.g.*, 18 U.S.C. §§ 3621(b), 4042(a).  That Congress has so entrusted the BOP—an agency situated within the Executive Branch—with day-to-day prison management increases "the risk of disruptive intrusion by the Judiciary into the functioning of other branches" if a court were to recognize a *Bivens* remedy.  *See Abbasi*, 137 S. Ct. at 1860.  In short, Cohen's allegations—none of which implicate the search and seizure, without warrant or probable cause, of an individual at liberty by officers performing ordinary law-enforcement functions—are a far cry from the facts alleged in *Bivens*, and the differences outlined above "easily satisf[y]" the new context inquiry with respect to Cohen's Fourth Amendment claim.  *Id.* at 1865.

Cohen's Eighth Amendment claim is likewise meaningfully different from that presented in *Carlson*.  *Carlson* involved a deliberate indifference claim arising under the Eighth Amendment asserted against prison officials for allegedly providing grossly inadequate medical care to an individual with a severe and chronic asthma condition—including delaying providing the individual with medical care and then providing medical care that affirmatively made the individual's condition worse—resulting in the individual's death.  *See Carlson*, 446 U.S. at 16 & n.1.  By contrast, Cohen challenges the conditions of his confinement, alleging that he was placed

in solitary confinement for 16 days upon his return to FCI Otisville, during which time he spent 23.5 hours of the day in a poorly ventilated twelve-by-eight-foot cell that lacked air conditioning and had temperatures in excess of 100 degrees.  *See* Compl. ¶¶ 100-02.  He alleges he received "immediate medical attention" for his resulting high blood pressure, headaches, shortness of breath, and anxiety.  *Id.* ¶ 102.

Cohen's challenge to the general conditions of his confinement is different in kind than the deliberate indifference claim raised in *Carlson*.  *See Abbasi*, 137 S. Ct. at 1860 (noting that differences in "the generality or specificity of the official action" may be meaningful).  Indeed, in *Abbasi* itself, the Court rejected an attempt by the plaintiffs to bring a conditions of confinement challenge under *Bivens*.  *See id.* at 1858-63.  Unsurprisingly, then, numerous courts within this Circuit and outside of it have found this distinction meaningful following *Abbasi* and have thus concluded that non-medical conditions of confinement claims present a new context not presented in *Carlson*.  *See, e.g.*, *Rodriguez v. Easter*, No. 20 Civ. 1872, 2022 WL 356478, at *7 (D. Conn. Feb. 7, 2022) (concluding that non-medical care Eighth Amendment claim presented new context because "[n]o Supreme Court decision has extended *Bivens* to encompass the conditions of confinement claims asserted by Plaintiff"); *Crespo v. Hurwitz*, No. 17 Civ. 6329, 2020 WL 7021658, at *5 (E.D.N.Y. Nov. 30, 2020) (same); *White v. Hess*, No. 14 Civ. 3339, 2020 WL 1536379, at *7 (E.D.N.Y. Mar. 31, 2020) (same); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 64 (E.D.N.Y. 2017) (same), *aff'd on other grounds*, 755 F. App'x 67 (2d Cir. 2018); *see also Schwarz v. Meinberg*, 761 F. App'x 732, 734 (9th Cir. 2019) ("Schwarz's Eighth Amendment claim regarding unsanitary cell conditions presents a new *Bivens* context because Schwarz does not allege a failure to treat a serious medical condition, which was the issue in *Carlson*.").

Moreover, Cohen's Eighth Amendment claim is premised primarily on BOP's housing

decision—namely, the decision to quarantine Cohen for 16 days upon his arrival to FCI Otisville—and one that was made against the backdrop of the global COVID-19 pandemic.  Thus, not only is the same increased risk "of disruptive intrusion by the Judiciary" into the day-to-day management of federal prisons present here as it was with respect to his Fourth Amendment claim, but an additional "special factor[] that previous *Bivens* cases did not consider"—the COVID-19 pandemic and the concomitant need to adjust prison policies in response to the threat posed by the pandemic—is also present.  *Abbasi*, 137 S. Ct. at 1860.  Consideration of the *Abbasi* factors thus demonstrates that the differences between Cohen's Eighth Amendment claim and the claim previously approved by the Court in *Carlson* are many and meaningful.  Thus, "the new-context inquiry is easily satisfied" here.  *Id.* at 1865.

## C.  Special Factors Counsel Hesitation

Because Cohen's claims present a new context, the Court must consider whether special factors counsel against implying a *Bivens* remedy in the face of congressional silence.  *Abbasi*, 137 S. Ct. at 1857.  In doing so, courts consider the existence of alternative remedial structures, as well as other indications that "Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong."  *Id.* at 1857-58.  The threshold for declining to imply a remedy is "remarkably low."  *Arar*, 585 F.3d at 574.  Here, that threshold is easily met as to each of Cohen's claims.

### 1.  *Alternative Remedial Structures Counsel Against Implying a Bivens Remedy*

At all times relevant to the allegations in the complaint, Cohen remained in the custody of the Government under the supervision of BOP.  Accordingly, with respect to all of the constitutional claims alleged in the complaint, the BOP's Administrative Remedy Program—a program created by congressional action, *see Abbasi*, 137 S. Ct. at 1858—provided an alternative remedial structure for Cohen "to seek formal review of an issue relating to any aspect of [his] own

confinement."  28 C.F.R. § 542.10(a).  In the wake of *Abbasi*, numerous courts have concluded that the Administrative Remedy Program is an alternative remedial structure that counsels against implying a *Bivens* remedy.  *See, e.g.*, *Rodriguez*, 2022 WL 356478, at \*6-7 (noting that the existence of the BOP administrative grievance process counseled against extending *Bivens* to prisoner's First Amendment retaliation and Eighth Amendment non-medical conditions of confinement claims); *Sabir v. Williams*, No. 20 Civ. 0008, 2020 WL 3489522, at \*4 (D. Conn. June 26, 2020) (same with respect to prisoner's First Amendment retaliation claim); *Widi v. Hudson*, No. 16 Civ. 1042, 2019 WL 3491250, at \*4 (N.D.N.Y. Aug. 1, 2019) (same); *Cannenier v. Skipper-Scott*, No. 18 Civ. 2383, 2019 WL 764795, at \*5 (S.D.N.Y. Feb. 20, 2019) (same with respect to prisoner's claim regarding improper placement in SHU).  Though an inmate cannot recover damages through the Administrative Remedy Program, an alternative process need only provide a "means to be heard" and "some procedure to defend and make good on [the inmate's] position" to counsel hesitation; it need not provide complete relief.  *See Wilkie v. Robbins*, 551 U.S. 537, 552 (2007).

The writ of habeas corpus provided another alternative remedial structure on which Cohen could rely—and in fact did rely with success.  As a result of his filing of a habeas petition, Judge Hellerstein ordered Cohen's transfer to home confinement for the remainder of his sentence, *see* No. 20 Civ. 5614, ECF Nos. 30, 36.  Numerous courts have also found that where, as here, the writ is available, a *Bivens* remedy should not be implied.  *See, e.g.*, *Rodriguez*, 2022 WL 356478, at \*6-7 (noting that the existence of the petition for writ of habeas corpus counseled against extending *Bivens* to plaintiff's First Amendment retaliation and Eighth Amendment non-medical conditions of confinement claims); *Wiley v. Fernandez*, No. 19 Civ. 652, 2021 WL 6550821, at \*5 (N.D.N.Y. Nov. 24, 2021) (noting same with respect to plaintiff's First Amendment retaliation claim), *report*

*and recommendation adopted*, 2022 WL 168965 (N.D.N.Y. Jan. 19, 2022); *Sabir*, 2020 WL 3489522, at *4 (same); *Silva v. Canarozzi*, No. 18 Civ. 1771, 2019 WL 1596346, at *3 (D. Conn. Apr. 15, 2019) (same); *Widi*, 2019 WL 3491250, at *4 (same); *Cannenier*, 2019 WL 764795, at *5 (same with respect to prisoner's claim regarding improper placement in SHU); *see also Abbasi*, 137 S. Ct. at 1862-63 (noting that respondents "might be able to challenge their confinement conditions via a petition for a writ of habeas corpus").

The existence of these alternative remedial structures alone suffices to limit the power of the Court to infer new *Bivens* causes of action under the First, Fourth, and Eighth Amendments. *See Abbasi*, 137 S. Ct. at 1858 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."). Accordingly, based only on this special factor, the Court should find that the "remarkably low" threshold for declining to imply a remedy has been met and conclude that Cohen lacks a *Bivens* remedy for the constitutional violations alleged in the Complaint. *See Arar*, 585 F.3d at 574.

2. *Other Special Factors Counsel Against Implying a Bivens Remedy*

Several additional special factors also counsel hesitation here.  First, Congress has legislated extensively in the arena of prison administration, including passing the Prison Litigation Reform Act ("PLRA") in 1995, but it has never "provide[d] for a standalone damages remedy against federal jailers." *Abbasi*, 137 S. Ct. at 1865.  The Supreme Court has intimated, and several courts in this Circuit have agreed, that Congress's silence in this regard should counsel hesitation because it "suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Id.*; *see also, e.g.*, *Rodriguez*, 2022 WL 356478, at *6-7 (concluding that the PLRA's failure to include damages remedy counseled hesitation with respect to First Amendment retaliation and Eighth Amendment non-medical conditions of confinement claims); *Crespo*, 2020 WL 7021658, at *6 (same with respect to Eighth Amendment non-medical

conditions of confinement claim); *Oneil v. Rodriguez*, No. 18 Civ. 3287, 2020 WL 5820548, at *4 (E.D.N.Y. Sept. 30, 2020) (same with respect to First Amendment retaliation claim); *Sabir*, 2020 WL 3489522, at *4 (same); *White*, 2020 WL 1536379, at *7 (same with respect to non-medical conditions of confinement claim); *Gonzalez*, 269 F. Supp. 3d at 65 (same).  Moreover, Congress's inclusion of an exhaustion requirement in the PLRA evinces its preference for the resolution of inmate grievances through the administrative process, which further counsels hesitation.  *See* 42 U.S.C. § 1997e(a); *Oneil*, 2020 WL 5820548, at *4.

Second, as discussed above, Cohen's Fourth and Eighth Amendment claims implicate questions of where individual prisoners should be housed and why—quintessential prison administration questions.  Not only has Congress expressly delegated broad authority to the BOP to make decisions regarding housing and stripped courts of jurisdiction to review challenges to such decisions, *see, e.g.*, 18 U.S.C. §§ 3621(b), 4042(a), but courts—including the Supreme Court—have also consistently recognized that the judiciary is ill suited to consider such questions of day-to-day prison administration.  *See, e.g.*, *Turner v. Safley*, 482 U.S. 78, 84-85 (1987) ("Prison administration is . . . a task that has been committed to the responsibility of [the Legislative and Executive] branches, and separation of powers concerns counsel a policy of judicial restraint.");  *Rodriguez*, 2022 WL 356478, at *7 (declining to extend *Bivens* remedy to prison conditions claim on this basis); *Sabir*, 2020 WL 3489522, at *4 (similar in First Amendment retaliation context); *Negron v. United States*, No. 19 Civ. 5442, 2020 WL 5634304, at *1 (S.D.N.Y. Sept. 21, 2020) (similar in Fifth Amendment context).

The Court should be especially wary of extending *Bivens* to Cohen's Eighth Amendment claim, which in essence challenges FCI Otisville's COVID-19 quarantine procedures.  *See Blanding v. Fed. Bureau of Prisons*, No. 21 Civ. 1115, 2021 WL 5139912, at *6 (E.D. Pa. Nov. 4,

2021) ("We should not authorize a damages remedy which would allow prisoners to litigate the propriety of prisons' COVID-19 policies.").  The COVID-19 pandemic was and remains "an unprecedented international health crisis necessitating complex mitigation efforts," and "[j]udges are not 'well suited' to create a damages action for claims based on federal jails' COVID-19 responses." *Blanding*, 2021 WL 5139912, at \*6.  Indeed, as a general matter, a "*Bivens* action is not a proper vehicle for altering an entity's policy," *Abbasi*, 137 S. Ct. at 1860 (citation and internal quotation marks omitted), and extending *Bivens* to claims that challenge prison policies put in place in response to a "worldwide pandemic"—such as quarantining arriving prisoners in order to curb the spread of the virus within the prison—"would substantially affect government operations and unduly burden federal correctional officials who must defend against such a suit in their personal capacities." *Blakey v. Pistro*, No. 21 Civ. 572, 2021 WL 2312647, at \*3 (E.D. Pa. June 7, 2021) (declining to extend *Bivens* to claim "concerning the need to lockdown a penal facility during a worldwide pandemic"); *see also Hand v. Young*, No. 20 Civ. 784, 2021 WL 3206833, at \*7 (E.D. Cal. July 29, 2021) (declining to imply *Bivens* remedy for Eighth Amendment non-medical conditions of confinement claim based on allegations that the prison was locked down for 23 hours a day due to COVID-19, noting that the claim arose "from . . . decisions related to effective management of prison populations in light of the COVID pandemic"), *report and recommendation adopted*, 2021 WL 5234429 (E.D. Cal. Nov. 10, 2021).

Finally, additional concerns also counsel hesitation with respect to Cohen's First Amendment retaliation claim.  As a general matter, the Second Circuit has instructed courts to "approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001).  As with Cohen's Fourth and Eighth Amendment claims, "prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into

31

matters of general prison administration" that are explicitly delegated to the BOP.  *Id.*  Indeed,

retaliation claims, like Cohen's, that challenge a decision "to place an inmate in more restrictive

detention" implicate "real-time and often difficult judgment calls about disciplining inmates,

maintaining order, and promoting prison officials' safety and security."  *Bistrian v. Levi*, 912 F.3d

79, 96 (3d Cir. 2018).  Given these concerns, several circuit courts have concluded that "Congress,

not the Judiciary, is in the best position to weigh the costs and benefits of allowing a damages

action to proceed" for prisoners' First Amendment retaliation claims.  *See Earle v. Shreves*, 990

F.3d 774, 781 (4th Cir. 2021) (citation and internal quotation marks omitted) (declining to imply

*Bivens* remedy with respect to prisoner's claim of retaliatory placement in special housing unit),

*cert. denied*, 142 S. Ct. 358 (2021); *see also Mack v. Yost*, 968 F.3d 311, 324-25 (3d Cir. 2020)

(similar); *Buenrostro* v. *Fajardo*, 770 Fed. App'x 807, 808 (9th Cir. 2019) (similar); *Bistrian*, 912

F.3d at 96 (similar); *Petzold* v. *Rostollan*, 946 F.3d 242, 252 n.46 (5th Cir. 2019) (similar).  And

"[n]ationwide, district courts seem to be in agreement that, post-*Abbasi*, prisoners have no right to

bring a *Bivens* action for violation of the First Amendment."  *White*, 2020 WL 1536379, at *6

(quoting *Akande v. Philips*, No. 17 Civ. 1243, 2018 WL 3425009, at *8 (W.D.N.Y. July 11, 2018)

(collecting cases)).[9]

        Given the several special factors counselling hesitation articulated above, the Court should

---

[9] The Government recognizes that in Cohen's separate habeas action Judge Hellerstein
concluded that the Government's purpose in remanding Cohen "was retaliatory in response to
Cohen desiring to exercise his First Amendment rights."  *See* 20 Civ. 5614, ECF No. 30.  However,
the question here is not whether the Government retaliated against Cohen in violation of his First
Amendment rights; rather, the question is whether *Bivens* affords Cohen a *damages remedy* for his
First Amendment retaliation claim.  In answering this question, courts have concluded, given the
concerns articulated above, that "Congress, not the Judiciary, is in the best position to weigh the
costs and benefits of allowing a damages action to proceed" for prisoners' First Amendment
retaliation claims.  *See Earle*, 990 F.3d at 781 (citation and internal quotation marks omitted).
And, if anything, the availability of the habeas process to Cohen only further counsels against
implying a *Bivens* remedy here.  *See supra* Section II.C.1.

conclude that Cohen has no *Bivens* remedy and dismiss this cause of action against the Individual Moving Defendants.

**D. Assuming a *Bivens* Remedy Exists, the Individual Moving Defendants Are Entitled to Qualified Immunity**

Even if the Court were to decide that a *Bivens* remedy exists for the constitutional claims asserted in Cohen's complaint (which it does not), the Court should nonetheless dismiss Cohen's *Bivens* claims because the Individual Moving Defendants are entitled to qualified immunity for their alleged actions.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Bacon v. Phelps*, 961 F.3d 533, 542 (2d Cir 2020) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The qualified immunity analysis thus requires courts to ask two questions: "first, whether the plaintiff [adequately alleged] that his constitutional rights were violated, and second, whether the right at issue was 'clearly established' at the time of the alleged violation." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis to address first in light of the circumstances in the particular case at hand." *Id.* (alteration and internal quotation marks omitted) (quoting *Pearson*, 555 U.S. at 236).

In considering qualified immunity on a motion to dismiss, the Court "'accept[s] as true the material facts alleged in the complaint and draw[s] all reasonable inferences in plaintiffs' favor,'" *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (quoting *Garcia v. Does*, 779 F.3d 84, 91 (2d Cir. 2015)), but it need not consider "'conclusory allegations or legal conclusions couched as factual allegations,'" *id.* (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)). "'[I]f the complaint does not allege a cognizable federal claim, the defendant is entitled to have his

qualified-immunity motion granted promptly as a matter of law.'" *Id.* (quoting *Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 211 (2d Cir. 2002)).

With respect to the first prong of the qualified immunity analysis, it is well established "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676; *see also Abbasi*, 137 S. Ct. at 1860 ("A *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others. . . . *Bivens* is not designed to hold officers responsible for acts of their subordinates."). Accordingly, a plaintiff must "plead . . . that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

With respect to the second prong, a right is "clearly established" if its contours are "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *McGowan v. United States*, 825 F.3d 118, 124 (2d Cir. 2016) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). When undertaking this inquiry, courts consider what a reasonable official in the defendant's position would understand under a given set of circumstances. *See, e.g.*, *Sloley v. VanBramer*, 945 F.3d 30, 40 (2d Cir. 2019) (considering what "every reasonable officer in the VanBramers' position as New York State Troopers" would have understood); *McGuire v. Cooper*, 952 F.3d 918, 923 (8th Cir. 2020) (considering what a "reasonable supervisor in Sheriff Dunning's position" would have understood); *Herring v. Keenan*, 218 F.3d 1171, 1180 (10th Cir. 2000) (considering what "a reasonable probation officer in Keenan's position" would have understood). "'Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is

clearly established.'" *Torcivia v. Suffolk Cty., New York*, 17 F.4th 342, 367 (2d Cir. 2021) (quoting *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004)).

In evaluating whether both prongs of the test for qualified immunity have been met, the Second Circuit has instructed courts to "look to 'the specific context of the case' at bar rather than 'broad general proposition[s].'" *Id.* at 368 (alteration in *Torcivia*) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).  In keeping with this admonition, "[t]he Supreme Court repeatedly has instructed that courts must not define clearly established law at 'a high level of generality.'" *Bacon*, 961 F.3d at 545 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

### 1. The Complaint Fails to Adequately Allege that Defendants Barr, Carvajal, Gustin, or Petrucci Personally Participated in a Constitutional Violation

Cohen's complaint is entirely devoid of any non-conclusory allegations that Defendants Barr, Carvajal, Gustin, or Petrucci personally violated Cohen's constitutional rights.  With respect to Defendant Barr, the complaint provides only a conclusory allegation that he "issued directives and guidance to his co-defendants which specifically governed the care, custody, and control of plaintiff" and that "[a]t the behest of then President Trump, and upon his own volition, [he] directed his subordinates to retaliate against plaintiff for the lawful exercise of his First Amendment rights by remanding him back to prison, and placing and/or was jointly responsible for placing him in solitary confinement at FCI Otisville."  *See* Compl. ¶ 38.  Cohen's complaint makes nearly identical conclusory allegations regarding Defendants Carvajal and Gustin.  *See id.* ¶¶ 39, 41.

These allegations amount to little more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.  They are "naked assertions devoid of further factual enhancement," the very type of "unadorned, the-defendant-unlawfully-harmed-me accusation" that fails to satisfy the pleading standard for alleging personal involvement.  *Id.* (alteration and internal quotation marks omitted).  Given these

threadbare allegations, the Court should conclude that Cohen's complaint fails to adequately allege that Defendants Barr, Carvajal, or Gustin, "through [ their] own individual actions," violated *any* of Cohen's constitutional rights. *Tangreti*, 983 F.3d at 612.

With respect to Defendant Petrucci, the complaint's allegations are also not sufficiently robust. Besides the allegations that mirror the threadbare, conclusory allegations asserted against Defendants Barr, Carvajal, and Gustin, *see* Compl. ¶ 40, the complaint also includes a conclusory allegation, with no factual support, that Defendant Petrucci "placed and/or was jointly responsible for placing Mr. Cohen in solitary confinement where he remained for approximately sixteen (16) days," *id.* ¶ 27. This additional allegation does not, on its own or in combination, adequately allege that Defendant Petrucci personally violated Cohen's Eighth Amendment rights. "To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities,' and (2) subjectively, the defendant official acted with 'a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety.'" *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted). Even assuming *arguendo* that the complaint elsewhere adequately alleged a sufficiently serious deprivation—it does not—nowhere does it specifically allege that Defendant Petrucci was deliberately indifferent to Cohen's health or safety. Given the threadbare nature of Cohen's allegations against Defendant Petrucci, the Court should likewise conclude with respect to him that Cohen's complaint fails to adequately allege that Defendant Petrucci, "through [his] own individual actions," violated *any* of Cohen's constitutional rights. *Tangreti*, 983 F.3d at 612.

For the foregoing reasons, even if the Court concludes that a *Bivens* remedy exists for the constitutional claims asserted in Cohen's complaint, it should nonetheless dismiss all constitutional claims against Defendants Barr, Carvajal, Gustin, and Petrucci.

2. *The Right Was Not Clearly Established as to Any Alleged Constitutional Violations by the Individual Moving Defendants*

Further, the constitutional rights that Cohen has alleged were violated by the Individual Moving Defendants were not clearly established at the time of the alleged violations.

With respect to Defendants McFarland, Febus, and Pakula, Cohen's allegations at most implicate his First and Fourth Amendment rights. *See* Compl. ¶¶ 13-24, 42-44, 73-98 (none of the allegations specific to these Defendants relate to the conditions of Cohen's confinement). With respect to Defendants Barr, Carvajal, Gustin, and Petrucci, Cohen also alleges violation of his Eighth Amendment rights. *See id.*; *see also id.* ¶¶ 99-102. To determine whether the alleged rights at issue here were clearly established at the time of the alleged violations, the Court must first determine what these rights are. To do so, it must examine "the specific context" of this case rather than "broad general proposition[s]." *Torcivia*, 17 F.4th at 367. Thus, the rights at issue here are not the general rights protected by the First, Fourth, and Eighth Amendments to be free from retaliation, unlawful seizures, and deliberate indifference to health and safety respectively. *See, e.g.*, *Bacon*, 961 F.3d at 545 ("In this case, the right at issue is not the *general proposition* that a prisoner has a First Amendment right to send mail and cannot be punished for its contents." (emphasis added)). Rather, defined at the appropriate level of specificity, the First Amendment right at issue is the right of an individual in BOP custody to be free from alleged retaliation in the form of restricting his First Amendment rights in the FLM agreement and of remanding him to federal prison rather than transitioning him from furlough to home confinement when he objected to the terms of that agreement; the Fourth Amendment right at issue is the right of an individual in

BOP custody who was on furlough and being transitioned to home confinement not to be remanded to federal prison upon his objection to the conditions in the FLM agreement; and the Eighth Amendment right at issue is the right not to be quarantined under restrictive conditions of confinement upon arrival to a federal prison during the COVID-19 pandemic.

The relevant question for the Court is whether precedent from the Second Circuit or the Supreme Court would put a reasonable Government official in each of the Defendants' positions on notice that they could not take the alleged actions that Cohen contends violated his rights. *See Bacon*, 961 F.3d at 545; *Sloley*, 945 F.3d at 40; *McGuire*, 952 F.3d at 923. It did not.

With respect to the alleged First Amendment violation, the Supreme Court and the Second Circuit have held that "[a] prisoner retains only 'those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Bacon*, 961 F.3d at 543 (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). On this basis, the Supreme Court has upheld various restrictions on prisoners' First Amendment rights, *see, e.g.*, *Pell*, 417 U.S. at 833-35, and the Second Circuit has noted that courts have "routinely . . . uph[e]ld prison policies restricting First Amendment rights that would not be permissible outside the prison context," *Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir. 1995). Thus, a reasonable Government official would not have understood that it would violate the First Amendment to impose certain free expression restrictions on an individual in BOP custody when transitioning him to home confinement or to remand the individual to prison when he objected to the restrictions. *See McGowan*, 825 F.3d at 124.

Further, with respect to the alleged Fourth Amendment violation, the Second Circuit has recognized "Supreme Court precedent holding that prisoners cannot dictate the particular institution within a penal system to which they are confined." *Lewis v. Rawson*, 564 F.3d 569, 578

n.8 (2d Cir. 2009) (citing cases); *accord McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). In light of this authority, and given Congress's express delegation of broad authority to the BOP to make housing decisions regarding individuals in its custody, *see, e.g.*, 18 U.S.C. §§ 3621(b), 4042(a), a reasonable official would not have understood that it would violate the Fourth Amendment to remand to federal prison an individual already lawfully in BOP custody who objected to conditions that were to govern his home confinement.[10]  *See McGowan*, 825 F.3d at 124.

Finally, with respect to the alleged Eighth Amendment violation by Defendants Barr, Carvajal, Gustin, and Petrucci, the Second Circuit has held in an analogous context that even Eighth Amendment claims predicated on SHU confinement (where Cohen was confined for less than 24 hours) do not accrue until "after an inmate has been confined in the SHU for a *prolonged* period of time," *Gonzalez v. Hasty*, 802 F.3d 212, 224 (2d Cir. 2015) (emphasis added), and has reiterated the general proposition that "'[r]estraints on an inmate do not violate the [Eighth] [A]mendment unless they are totally without penological justification, grossly disproportionate, or involve the unnecessary and wanton infliction of pain,'" *Horne v. Coughlin*, 155 F.3d 26, 31 (2d Cir. 1998) (quoting *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir. 1984)) (internal quotation marks omitted). In light of this authority, and given the unprecedented nature of the COVID-19 pandemic and the need to adjust prison policies in response to the threat posed by it, a reasonable official would not have understood that it would violate the Eighth Amendment to quarantine an individual

---

[10]  Moreover, another court to have considered the issue concluded that it is not even clearly established whether transferring an individual in BOP custody from home confinement to prison confinement results in a new "seizure" that may give rise to a Fourth Amendment claim.  *See Ortega v. U.S. Immigration and Customs Enforcement*, 737 F.3d 435, 441 (6th Cir. 2013) (affirming dismissal of Fourth Amendment claim on this basis).

in BOP custody under restrictive conditions of confinement for a limited period of time upon his arrival to a federal prison in response to the COVID-19 pandemic.

In sum, because the rights at issue here were not clearly established at the time of the alleged violations, the Individual Moving Defendants are entitled to qualified immunity.  Thus, the Court should dismiss all constitutional claims against them.

## CONCLUSION

For the foregoing reasons, the Court should grant the Moving Defendants' motion and dismiss Cohen's complaint against them in full.


Dated: New York, New York
         April 4, 2022

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney for the
                                        Southern District of New York
                                        Attorney for Moving Defendants

                          By:    /s/ *Allison M. Rovner*
                                 ALLISON M. ROVNER
                                 ALYSSA B. O'GALLAGHER
                                 Assistant United States Attorneys
                                 86 Chambers Street, 3rd Floor
                                 New York, New York 10007
                                 Telephone: (212) 637-2691/2822
                                 Facsimile: (212) 637-2786
                                 E-mail: allison.rovner@usdoj.gov
                                         alyssa.o'gallagher@usdoj.gov