## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL D. COHEN,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES OF AMERICA, DONALD J. TRUMP, former President of the United States, WILLIAM BARR, former Attorney General of the United States, MICHAEL CARVAJAL, Director of the Bureau of Prisons, JON GUSTIN, Administrator of the Residential Reentry Management Branch of the Bureau of Prisons, PATRICK McFARLAND, Residential Reentry Manager of the Federal Bureau of Prisons, JAMES PETRUCCI, Warden of FCI Otisville, ENID FEBUS, Supervisory Probation Officer of the United States Probation and Pretrial Services, ADAM PAKULA, Probation Officer of the United States Probation and Pretrial Services, and JOHN and JANE DOE (1-10) agents, servants, and employees of the United States,<br><br>*Defendants.* | Civil Action No.: 1:21-cv-10774-LJL |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO FRCP RULE 12</u>

Alina Habba, Esq.
**HABBA MADAIO & ASSOCIATES LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
        -and-
112 West 34th St, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
*Attorneys for Defendant, Donald J. Trump, former President of the United States*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... ii

ARGUMENT ..................................................................................................................... 1

I.   Plaintiff's Claims are Precluded by the Doctrine of Presidential Immunity ......................... 1

A.   Presidents are Entitled to Absolute Immunity Against Bivens Claims ................................. 3

B.   Plaintiff Explicitly Alleges that Defendant Was Acting Within the Scope of His Official
Duties ............................................................................................................................... 5

C.   The Complaint is Directed Against Defendant in His Official Capacity as President ........... 6

II.   If Absolute Immunity Does Not Apply Then Plaintiff's Claims are Non-Actionable .......... 8

III.   Bivens Should Not be Extended to a New Context ............................................................. 10

A.   There are Special Factors Counselling Hesitation Against Implying a Bivens Remedy ...... 12

B.   There is an Alternative Congressional Remedy for the Recovery Sought ........................... 14

IV.   The Complaint Fails to State a Cognizable Claim Against Defendant ................................. 15

CONCLUSION .................................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v Biden,*
    CV-21-01150-PHX-JAT, 2021 WL 3472740........................................................4

*Arar v. Ashcroft,*
    585 F3d 559, 573 (2d Cir. 2009)........................................................10, 12, 17

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678 (2009)........................................................8, 9, 10, 16

*Beattie v. Boeing Co.,*
    43 F.3d 559, 563 (10th Cir.1994) ........................................................12

*Bell Atlantic Corp. v. Twombly.,*
    550 U.S. 544, 555 (2007)........................................................14

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
    403 U.S. 388 (1971),........................................................3, 12

*Brown v Obama,*
    10-CIV-6426-LBS, 2011 WL 2207569 ........................................................4

*Butz v. Economou,*
    438 U.S. 478, 501 (1978),........................................................3, 4, 9

*Carlson v. Green,*
    446 U.S. 14, 18-19 (1980) ........................................................10, 11, 12

*Chastain v. Sundquist,*
    833 F.2d 311, 315 (D.C. Cir. 1987)........................................................5

*Clinton v. Jones,*
    520 U.S. 681, 696 (1997)........................................................2, 5

*Corr. Servs. Corp. v. Malesko,*
    534 U.S. 61, 70 (2001)........................................................10, 15

*Davis v. Passman,*
    442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979)........................................................10

*Doe v. Hagenbeck,*
    870 F.3d 36, 43 (2d Cir. 2017)........................................................10

*Dotson v. Griesa,*
    398 F.3d 156 (2d Cir. 2005)..............................................................................12

*Galella v. Onassis,*
    487 F.2d 986, 993 (2d Cir. 1973).........................................................................4

*Imbler v. Pachtman,*
    424 U.S. 409, 419 n.13 (1976)............................................................................8

*Jackson v Bush,*
    448 F.Supp 2d 198, 201-02 (D.D.C. 2006)........................................................4

*Jackson v. Metropolitan Edison Co.,*
    419 U.S. 345, 349 (1974)....................................................................................9

*Klayman v. Obama,*
    125 F.Supp.3d 67, 86 (D.D.C. 2015)..................................................................7

*Nixon v. Fitzgerald,*
    457 U.S. 731 (1982)...........................................................1, 2, 3, 4, 5, 6, 7, 8, 13

*Ostrer v. Aronwald,*
    567 F.2d 551, 553 (2d Cir. 1977)......................................................................16

*Pierson v. Ray, ,*
    386 U.S. 547, 554 (1967)................................................................................1, 2

*Robertson v. Sichel,*
    127 U.S. 507, 515–516 (1888)............................................................................8

*Screws v. United States,*
    325 U.S. 91, 111 (1945).......................................................................................9

*Sommer v. Dixon,*
    709 F.2d 173, 175 (2d Cir. 1983).................................................................16, 17

*United States v. City of Philadelphia,*
    644 F.2d 187, 200 (3d Cir.1980).......................................................................12

*United States v. Curtiss–Wright Exp. Corp.,*
    299 U.S. 304 (1936)..........................................................................................13

*United States v. Stanley,*
    483 U.S. 669 (1987)..........................................................................................12

*United States v. Verdugo–Urquidez,*
    494 U.S. 259, 274 (1990) ................................................................................12

*Warren v. Fischl,*
    33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) .......................................................17

*Wilkie v. Robbins,*
    551 U.S. 537, 550, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007) ..........................10

*Ziglar v. Abbasi,*
    137 S. Ct. 1843, 1856 (2017) ..........................................................................10

**Rules and Statutes**

U.S. Const. Art. II, § 1 ...........................................................................................6, 7

18 U.S.C. § 3621(b) ...................................................................................................15

28 U.S.C. § 501 ...........................................................................................................6

FRCP 8(a)(2) ..............................................................................................................14

Defendant, Donald J. Trump ("Defendant"), by and through his undersigned attorneys, Habba Madaio & Associates LLP, respectfully submits this memorandum of law in support of his motion to dismiss (the "Motion") the Complaint filed by the plaintiff, Michael D. Cohen ("plaintiff"), pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").  For the reasons set forth herein, Defendant's motion must be granted in its entirety.

## ARGUMENT

### I.   Plaintiff's Claims are Precluded by the Doctrine of Presidential Immunity

As a threshold matter, Defendant is not a proper party to this action since his alleged conduct falls squarely within his official duties as President.  As such, these official acts are shielded by presidential immunity and Defendant cannot be subject to civil liability for the conduct at issue.

It is blackletter law that a president is entitled to absolute immunity for acts taken within the scope of his official duties. *See generally Nixon v. Fitzgerald*, 457 U.S. 731 (1982).  This precedent was established in the seminal case of *Nixon*, wherein the Supreme Court held that this wide-spanning, unqualified immunity is "a functionally mandated incident of the President's unique office, rooted in the constitutional tradition of the separation of powers and supported by our history." *Id*. at 749.  The Supreme Court emphasized the indispensable nature of this protection, noting that, without it, a President's ability to effectively serve his country would be severely hindered.  In particular, the Supreme Court reasoned:

> Because of the singular importance of the President's duties, diversion of his energies by concern with private lawsuits would raise unique risks to the effective functioning of government. As is the case with prosecutors and judges—for whom absolute immunity now is established—a President must concern himself with matters likely to "arouse the most intense feelings." *Pierson v. Ray*, 386 U.S., at 554, 87 S.Ct., at 1218. Yet, as our decisions have recognized, it is in precisely such cases that there exists the greatest public interest in providing an official "the maximum ability to deal fearlessly and impartially with" the duties of his

1

office. *Ferri v. Ackerman*, 444 U.S. 193, 203, 100 S.Ct. 402, 408, 62 L.Ed.2d 355 (1979). This concern is compelling where the officeholder must make the most sensitive and far-reaching decisions entrusted to any official under our constitutional system. Nor can the sheer prominence of the President's office be ignored. In view of the visibility of his office and the effect of his actions on countless people, the President would be an easily identifiable target for suits for civil damages. Cognizance of this personal vulnerability frequently could distract a President from his public duties, to the detriment of not only the President and his office but also the Nation that the Presidency was designed to serve.

*Id.* at 752-753. *see also Pierson v. Ray*, 386 U.S. 547, 554 (1967) (explaining that immunity serves the public interest in preserving the independence and decisiveness necessary of government officials); *Trump v. Vance*, 140 S. Ct. 2412, 2425 (noting that the President's duties "are of unrivaled gravity and breadth.").

In *Nixon*, a government whistleblower attempted to sue President Nixon for wrongful termination, claiming that Nixon had unlawfully fired him in retaliation for damaging testimony that he had given before an oversight committee. The Supreme Court flatly rejected the contention that President Nixon could be subject to civil liability for his decision to terminate the whistleblower, and held, in a sweeping decision, that "a former President of the United States is entitled to absolute immunity from damages liability predicated on his official acts." *Id.* at 749. Further, given the "special nature of the President's constitutional office and functions," the Supreme Court found it appropriate to extend the absolute immunity of a President beyond the mere 'functional' immunity afforded to other federal officials such as judges, prosecutors, etc. and held that a President is entitled to absolute immunity for any and all "acts within the 'outer perimeter' of his official responsibility." *Id.* at 755; *see also Clinton v. Jones*, 520 U.S. 681, 694 (1997) ("Because of the President's broad responsibilities, we recognized in [*Nixon*] an immunity from damages claims arising out of the official acts extending to the 'outer perimeter' of his authority.") (citing *Nixon*, 457 U.S. at 757)

In the present scenario, it cannot be reasonably disputed that Defendant is entitled to absolute immunity in connection with the conduct alleged in the Complaint.  Therefore, for the reasons set forth herein, the Complaint must be dismissed in its entirety.

### A.  Presidents are Entitled to Absolute Immunity Against Bivens Claims

At the outset, it is plainly evident that Defendant is entitled to absolute immunity based upon the manner in which the Complaint is plead.  In particular, of the seven causes of actions asserted by Plaintiff in the Complaint, the only one that pertains to Defendant is the Seventh Cause of Action, which alleges various violations of Plaintiff's First, Fourth, and Eighth Amendment rights and is plead against "all Individual Defendants." Compl. ¶¶ 139-142.  Notably, the Seventh Cause of Action is explicitly fashioned as a *Bivens* claim. *Id.*

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, the Supreme Court authorized an implied cause of action for constitutional violations arising from a federal official. *See generally Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).  To maintain a *Bivens* claim against a federal official, a plaintiff must show that the official was "acting under color of his authority." *Id.* at 389; *Butz v. Economou*, 438 U.S. 478, 501 (1978) ("It mandated that any person who, under color of state [or federal] law, subjected another to the deprivation of his constitutional right would be liable to the injured party in an action at law.").

Since a president is entitled to absolute immunity for "acts within the 'outer perimeter' of his official capacity," it follows that a *Bivens* claim—which must arise from an act performed "under color of his authority"—cannot be maintained against a President. *Nixon*, 457 U.S. at 755. Stated differently, by bringing a *Bivens* claim, a plaintiff must necessarily admit that a defendant was acting within the scope of his official responsibilities, which, as it relates to a President, will

as a matter of course trigger the doctrine of absolute immunity and foreclose the Plaintiff's ability to bring the claim. *See e.g., Galella v. Onassis*, 487 F.2d 986, 993 (2d Cir. 1973) ("If an officer is acting within his role as a government officer his conduct is at least within the outer perimeter of his authority.").

Indeed, the Supreme Court has expressly held that a *Bivens* claim cannot be maintained against a current or former president for acts taken while in office. *Nixon*, 457 U.S. at 749 ("[A] former President of the United States[] is entitled to absolute immunity from damages liability predicated on his official acts."); *see also Id.* at 770 (White, J., dissenting) ("[I]t is difficult to read the [majority's] opinion coherently as standing for any narrower proposition: Attempts to subject the President to liability . . . through a *Bivens* proceeding would violate the separation of powers."). Numerous other courts have echoed this sentiment. *See Allen v Biden*, CV-21-01150-PHX-JAT, 2021 WL 3472740, at *1 (D. Ariz., Aug. 6, 2021) ("The Supreme Court has also held that the President of United States is entitled to absolute immunity from *Bivens* actions) (citing *Nixon*, 457 U.S. at 758); *Brown v Obama*, 10-CIV-6426-LBS, 2011 WL 2207569, at *2 (S.D.N.Y., May 31, 2011) ("Were Plaintiff to bring this [*Bivens*] action . . . against the President in his individual capacity, it would likewise be dismissed, as the President 'is entitled to absolute immunity from damages liability predicated on his official  acts.'") (citing *Nixon*, 457 U.S. at 749); *Jackson v Bush*, 448 F.Supp 2d 198, 201-02 (D.D.C. 2006) ("Since plaintiff brings this suit against President Bush for actions he allegedly took 'within the scope of his lawful authority,' the President has absolute immunity from this lawsuit in his individual capacity.") (citing *Nixon* 457 U.S. at 756); *see also Butz*, *supra* (explaining that *Bivens* is "drained of meaning" when absolute immunity is applied and requiring specific federal officials to show that "public policy requires an exemption of that scope" – as has already been held to apply to the position of President in *Nixon*.).

Plaintiff acknowledges that Defendant "was President of the United States" at all relevant times referenced in the Complaint. Compl. ¶ 37.  Consequently, well-established law dictates that Defendant is entitled to absolute immunity from Plaintiff's *Bivens* claim.  Therefore, the Seventh Cause of Action—and the Complaint as a whole—must be dismissed against Defendant.

### B. Plaintiff Explicitly Alleges that Defendant Was Acting Within the Scope of His Official Duties

Even if Plaintiff's claim against Defendant were not precluded as a matter of law, examination of the allegations contained in the Complaint confirm beyond any shadow of a doubt that absolute immunity must be applied here.

As established in *Nixon*, in determining whether a President should be afforded absolute immunity, the relevant inquiry is whether the liability in a civil lawsuit is "predicated on [the President's] official acts." *Nixon,* 457 U.S. at 749.  A President's "sphere of protected action" is interpreted broadly and extends to conduct within the "outer perimeter of his official responsibilities." *Id.* at 756; *see also Chastain v. Sundquist*, 833 F.2d 311, 315 (D.C. Cir. 1987) (holding that presidential immunity "is absolute . . . subject only to the requirement that [his] actions fall within the outer perimeter of [his] official duties"); *Clinton*, 520 U.S. at 696 ("With respect to acts taken in his 'public character'—that is, official acts—the President may be disciplined principally by impeachment, not by private lawsuits for damages.").

Here, there is no question that the conduct at issue falls squarely within Defendant's official presidential duties.  Plaintiff does not dispute this; in fact, he plainly admits as much in the Complaint.  Specifically, Plaintiff pleads that "at all relevant times herein, the individual defendants **acted within the course and scope of their employment and under the color of law**." *Id.* ¶ 47 (emphasis added).  He also pleads that "**[t]he conduct of all defendants was accomplished under color of law**." *Id.* ¶ 142 (emphasis added).  In other words, Plaintiff

5

implicitly acknowledges in the Complaint that his claims are "predicated on [Defendant's] official acts" as President. *Nixon*, 457 U.S. at 749.

Accordingly, by Defendant's own admission, absolute immunity must be applied on this basis alone.

### C. The Complaint is Directed Against Defendant in His Official Capacity as President

In addition to Plaintiff's outright admission that Defendant "at all relevant times . . . acted within the scope of his employment and under the color of law," *Id.* ¶ 47, further review of the Complaint confirms that Plaintiff's claims are directed against Defendant in his official role as President. For instance, Defendant is identified in the caption of the Complaint as "DONALD J. TRUMP, *former President of the United States*." Compl. at 1 (emphasis added). Likewise, in the "Parties" section, Plaintiff states that "[a]t all relevant times herein, defendant Donald J. Trump was President of the United States . . . was head of the Executive Branch of the Federal Government . . . [and] was responsible for the oversight and enforcement of the laws of the United States." *Id.* ¶ 37.

Moreover, Plaintiff's theory of liability against Defendant is solely premised upon his assertion that Defendant "issued specific directives and guidance to his co-defendants" concerning the handling of Plaintiff's incarceration and potential furlough. *Id.* ¶ 37. The "co-defendants" referred to by Plaintiff are all current and/or former federal employees of the Department of Justice (DOJ) and the Federal Bureau of Prisons (FBOP), both organized under the Executive Branch. *See* 28 U.S.C. § 501 ("The Department of Justice is an executive department of the United States at the seat of Government."); *See generally* 18 U.S.C. § 4041 *et seq.* (setting forth the organization and structure of the BOP). Defendant's authority to manage, direct or otherwise exert control over the DOJ and/or the BOP is derived exclusively from his role as President. *See* U.S. Const. Art. II,

§ 1 ("The executive Power shall be vested in a President of the United States of America."); *Nixon*, 457 U.S. 731 at 750 (noting that Art. II, § 1 "establishes the President as the chief constitutional officer of the Executive Branch, entrusted with supervisory and policy responsibilities of utmost discretion and sensitivity.").  Thus, any "specific directives" issued by Defendant to his co-defendants would have been well within his official responsibilities as chief of the Executive Branch.  This authority also arises from a President's overarching duty to "preserve, protect, and defend the Constitution," U.S. Const. Art. II, § 1, and to take "[c]are that the Laws be faithfully executed[.]" U.S. Const. Art. II, § 3; *see also Myers v. United States*, 272 U.S. 52, 122 (1926) (describing the take care clause as "sweeping words" which are to be broadly interpreted.).

To the extent Plaintiff may contend that the Complaint alleges that the Defendant's conduct were motivated by malicious intent, thereby exceeding his official authority, this argument fails since it is well established that presidential immunity is "not overcome by 'allegations of bad faith or malice.'" *Klayman v. Obama*, 125 F.Supp.3d 67, 86 (D.D.C. 2015) (quoting *Barret v. Harrington*, 130 F.3d 246, 254-55 (6th Cir. 1997)).  For the purposes of determining whether absolute immunity applies, a court's inquiry must focus on the objective nature of the conduct in question (i.e., whether the act itself is within the scope of a president's official duties); inquiry into the subjective motive or intent underlying the alleged conduct is prohibited. *See Nixon*, 457 U.S. at 756 ("[A]n inquiry into the President's motives could not be avoided under the kind of 'functional' theory asserted both by respondent and the dissent. Inquiries of this kind could be highly intrusive."). Thus, while Defendant wholly and adamantly denies the veracity of Plaintiff's claims—including his assertion that Defendant acted in bad faith in any manner whatsoever—this issue is simply not properly before the Court.

In sum, considering the nature of Plaintiff's sole claim against Defendant—a *Bivens* claim seeking damages for official conduct—coupled with the substance of the allegations contained in the Complaint—including Plaintiff's admission that Defendant was acting "within the course and scope of [his] employment and under the color of law"—it is indisputable that the Seventh Cause of Action is "predicated on [Defendant's] official acts" as President. *Nixon*, 457 U.S. at 749. As such, Defendant is entitled to absolute immunity and the Complaint must be wholly dismissed against him. *See Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976) ("[A]bsolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.).

**II.**      **If Absolute Immunity Does Not Apply Then Plaintiff's Claims are Non-Actionable**

Assuming *arguendo* that Defendant is not entitled to absolute immunity, this Court would inevitably be required to find that Defendant was not acting in his "official capacity." *Nixon*, 457 U.S. at 759. In such a scenario, Defendant could not possibly be found liable under the *Bivens* doctrine.

It is well established that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior. Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citing *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *Robertson v. Sichel,* 127 U.S. 507, 515–516 (1888) ("A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties") (additional citations omitted). "Because vicarious liability is inapplicable to *Bivens* . . . a plaintiff must plead that each Government-official defendant, through

the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Here, assuming that Defendant was not acting in his official capacity, the absence of vicarious liability is fatal to Plaintiff's claim.  In the Complaint, the only allegation Plaintiff levies against Defendant is that he "issued specific directives and guidance to his co-defendants that governed the treatment of [P]laintiff" and that "at [Defendant's] direction, [P]laintiff was remanded back to prison and subject to great indignities when he was unlawfully incarcerated and held in solitary confinement." Compl. ¶ 36.  Since Defendant cannot be held vicariously liable for the actions of the co-defendants, it follows that Defendant—"title notwithstanding"—can only be "held liable for *his own misconduct*." *Id.* at 677 (emphasis added).  But outside of his "official capacity," Defendant lacks the requisite authority to "issue specific directives [or] guidance" to the co-Defendants.  As a result, Plaintiff has failed to allege any specific wrongdoing on the part of Defendant.

Moreover, assuming Defendant's actions were carried out in an unofficial capacity, his actions would be strictly private in nature and thereby fall outside the purview of conduct actionable under *Bivens*. *See Screws v. United States*, 325 U.S. 91, 111 (1945)  (noting that "acts of officers in the ambit of their personal pursuits" do not qualify as acts committed "under the color of law."); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349 (1974) (finding that purely private conduct causing constitutional deprivations is non-actionable under 42 U.S.C. § 1983); *see also Butz*, 438 U.S. at 478 (holding that scope of liability for federal officials under *Bivens* actions is coextensive with liability of state officials under § 1983).

Therefore, even if absolute immunity is not applicable here, the Complaint fails all the same.

9

### III.   *Bivens* Should Not be Extended to a New Context

Plaintiff's attempt to assert a *Bivens* claim against Defendant, the former President of the United States, is misguided and wholly inconsistent with the Supreme Court's reluctance to extend the *Bivens* doctrine beyond its narrow application in very limited circumstances.

The reasoning behind the Supreme Court's ruling in *Bivens*—which established a private right of action for the violation of an individual's constitutional rights by a federal official acting under the color of federal authority—was "to deter individual federal officers from committing constitutional violations.' " *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001).  Since its holding in *Bivens*, the Supreme Court has consistently cautioned that *Bivens* provides an extraordinary remedy that should rarely if ever be applied in "new contexts." *Id*. at 69; *see also Wilkie v. Robbins,* 551 U.S. 537, 550, (2007) ("[I]n most instances we have found a *Bivens* remedy unjustified."); *Malesko,* 534 U.S. at 68, 122 S.Ct. 515 ("[W]e have consistently refused to extend *Bivens* liability to any new context or new category of defendants.").

In fact, in the more than 50 years since *Bivens,* the Supreme Court has "extended it twice only: in the context of an employment discrimination claim in violation of the Due Process Clause, *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); and in the context of an Eighth Amendment violation by prison officials, *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15." *Arar v. Ashcroft*, 585 F.3d 559, 571(2d Cir. 2009).  Aside from these narrow contexts, the Supreme Court has "otherwise consistently declined to broaden *Bivens* to permit new claims." *Doe v. Hagenbeck*, 870 F.3d 36, 43 (2d Cir. 2017)' *see also Wilkie,* 551 U.S. 537, 550 (2007) ("[I]n most instances we have found a *Bivens* remedy unjustified."); *Malesko,* 534 U.S. at 68, 122 S.Ct. 515 ("[W]e have consistently refused to extend *Bivens* liability to any new context or new category of defendants.").

Recently, the Supreme Court reiterated that courts should not imply rights and remedies as a matter of course, "no matter how desirable that might be as a policy matter, or how compatible with the statute [or constitutional provision]." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017). "Given the notable change in the Court's approach to recognizing implied causes of action, ... the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

Given the Supreme Court's hesitation to extend the doctrine, before delving into the substantive analysis on a *Bivens* claim "the first question a court must ask [is] whether the claim arises in a new *Bivens* context." *Abbasi*, 137 S. Ct. at 1864; *accord id.* at 1860. A case presents a new context when it differs "in a meaningful way" from the three "previous *Bivens* cases" in which the Supreme Court created a damages remedy (*Bivens*, *Davis*, and *Carlson*). *Id.* at 1859.

The instant action puts forth a novel factual scenario which has never been previously before any court, certainly not in context of the *Bivens* doctrine. Consistent with the Supreme Court's holding in *Nixon*, a *Bivens* claim has never been permitted to proceed against a former President for acts taken while in office. Further, while the Supreme Court has confirmed that a *Bivens* claim may be raised in the context of a Fourth Amendment claim, *see Bivens*, *supra*, and an Eighth Amendment claim, *see Carlson*, *supra*, the doctrine has never been extended to apply to claims arising under the First Amendment. Here, Plaintiff seeks to jointly raise a *Bivens* claims arising under *all three* of these Amendments—First, Fourth, and Eighth—a scenario which has never been dealt with previously. As a result, given the incredibly narrow application of *Bivens* and the unique circumstances in this case, there is no question that the instant matter arises in a new *Bivens* context.

Once it has been established that a *Bivens* claim involves a new or unique context, the claim will "be defeated" if a defendant is able to demonstrate that one of two situations apply: (i) there are "special factors counselling hesitation in the absence of affirmative action by Congress"; or (ii) Congress has "provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." *Reuber v. United States*, 750 F.2d 1039, 1056 (D.C. Cir. 1984).   Since both circumstances are present in this matter, Plaintiff's *Bivens* claim is excluded as a matter of law.

**A.** ***There are Special Factors Counselling Hesitation Against Implying a Bivens Remedy***

 "A *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.' " *Abbasi*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. 14 (1980); *see also Arar*, 585 F.3d at 573 ("When the *Bivens* cause of action was created in 1971, the Supreme Court explained that such a remedy could be afforded because that "case involve[d] no special factors counselling hesitation in the absence of affirmative action by Congress'") (citing *Bivens*, 403 U.S. at 396).

In determining whether special factors counselling hesitation are present, a court's inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S.Ct. at 1857-58.  If it is not, a 'special factor' is present and dismissal of the complaint is warranted. *Id.*  In this context, a court's threshold for declining to imply a *Bivens* remedy is "remarkably low." *Arar*, F.3d at 574.

Among the "special factors" that have "counsel[ed] hesitation" and thereby foreclosed a *Bivens* remedy are: military concerns, United States v. *Stanley,* 483 U.S. 669 (1987); separation of powers, *United States v. City of Philadelphia,* 644 F.2d 187, 200 (3d Cir.1980); the

comprehensiveness of available statutory schemes, *Dotson v. Griesa,* 398 F.3d 156 (2d Cir. 2005); national security concerns, *Beattie v. Boeing Co.,* 43 F.3d 559, 563 (10th Cir.1994); and foreign policy considerations, *United States v. Verdugo–Urquidez,* 494 U.S. 259, 274 (1990); *see also Arar v. Ashcroft*, 585 F.3d 559, 573 (2d Cir. 2009).

Here, there are numerous factors which counsel hesitation in allowing Plaintiff's *Bivens* claim to proceed in this new and novel context against Defendant.  The most notable is the separation of powers – since the *Bivens* claim relates to actions undertaken by Defendant while he was serving in the role of President, there is a serious "risk of disruptive intrusion by the Judiciary into the functioning of other branches." *Abbasi*, 137 S. Ct. at 1860.  Indeed, the *Abbasi* court emphasized that the "central" special-factor inquiry derives from "separation-of-powers principles." *Id.* at 1857.  Permitting a *Bivens* claim against the President would run headlong into this concern. S*ee United States v. Curtiss–Wright Exp. Corp.,* 299 U.S. 304 (1936) (noting the "plenary and exclusive power of the President as the sole organ of the federal government" and discussing the difficulties presented by congressional—let alone judicial—involvement in such affairs.).

In *Nixon*, the Supreme Court was similarly concerned with the issue of separation of powers – its finding that presidential immunity was "a functionally mandated incident of the President's unique office" was "rooted in the constitutional tradition of the separation of powers." *Nixon*, 457 U.S. at 749.  The Supreme Court also highlighted the President's "management of the Executive Branch" as one of the reasons why absolute immunity is warranted, stating that it is "a task for which 'imperative reasons require[e] an unrestricted power [in the President] to remove the most important of his subordinates in their most important duties." *Id.* at 750.

Expanding the *Bivens* doctrine in this case by permitting a claim to proceed against Defendant, the former President of the United States, would implicate numerous separation-of-powers concerns and would fly directly in the face of the Supreme Court's holdings in both *Abbasi* and *Nixon*.   As such, this "special factor counselling hesitation" warrants dismissal of the Complaint. *Abbasi*, 137 S. Ct. at 1857

**B.   *There is an Alternative Congressional Remedy for the Recovery Sought.***

As clarified by *Abbasi*, this "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1857-58. A court should not extend the *Bivens* remedy if "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." *Id*. at 1858. Relatedly, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action." *Id*.

Extension of *Bivens* to this case would be inappropriate because Plaintiff had available to him alternative methods of seeking relief. "[W]hen alternative methods of relief are available, a Bivens remedy usually is not." *Abbasi*, 137 S. Ct. at 1863.  The presence of "alternative, existing process[es]" for challenging allegedly unconstitutional action may "alone" foreclose the extension of *Bivens* to a new context. *Id*. at 1858 (*quoting Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). Such alternatives "can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018).

Here, there exists an alternative remedy that functions as an appropriate substitute for the relief sought by Plaintiff.  Namely, the BOP's Administrative Remedy Program—created by Congress—provides an alternative remedial structure for Plaintiff "to seek formal review of an

issue relating to any aspect of [his] own confinement." 28 C.F.R. § 542.10(a); *see also Abbasi,* 137 S. Ct. at 1858.  Numerous courts have already found that the Administrative Remedy Program is an alternative remedial structure precludes the assertion of a *Bivens* remedy. *See, e.g., Rodriguez v. Easter*, No. 20 Civ. 1872, 2022 WL 356478, at *6-7 (D. Conn. Feb. 7, 2022); *Sabir v. Williams*, No. 20 Civ. 0008, 2020 WL 3489522, at *4 (D. Conn. June 26, 2020); *Widi v. Hudson*, No. 16 Civ. 1042, 2019 WL 3491250, at *4 (N.D.N.Y. Aug. 1, 2019) (same); *Cannenier v. Skipper-Scott*, No. 18 Civ. 2383, 2019 WL 764795, at *5 (S.D.N.Y. Feb. 20, 2019). While damages are not recoverable through the Administrative Remedy Program, an alternative process need only provide a "means to be heard" and "some procedure to defend and make good on [the inmate's] position" to counsel hesitation; it need not provide complete relief. *See Wilkie*, 551 U.S. at 552.

Likewise, numerous courts have also found that the writ of habeus corpus serves as a sufficient alternative remedial structure that bars the inclusion of a *Bivens* claim. See, e.g., *Rodriguez*, 2022 WL 356478); *Wiley v. Fernandez*, No. 19 Civ. 652, 2021 WL 6550821 (N.D.N.Y. Nov. 24, 2021); *Sabir*, 2020 WL 3489522; *Silva v. Canarozzi*, No. 18 Civ. 1771, 2019 WL 1596346, at *3 (D. Conn. Apr. 15, 2019); *Widi*, 2019 WL 3491250; *Cannenier*, 2019 WL 764795.

Based on the foregoing—and given the incredibly narrow application of *Bivens*—there is no question that Plaintiff's *Bivens* claim against Defendant is not an appropriate extension of the doctrine and, therefore, subject to dismissal.

## IV.    The Complaint Fails to State a Cognizable Claim Against Defendant

All other defenses aside, the Complaint fails on a fundamental level since it is markedly deficient as a matter of law, factually implausible, and otherwise fails to set forth a cognizable claim against Defendant.

Under FRCP 8(a)(2), a pleading must contain a "short a plain statement of the claim showing the pleading is entitled to relief." FRCP 8(a)(2). The pleading standard of FRCP 8(a)(2) requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Bell Atlantic Corp. v. Twombly.*, 550 U.S. 544, 555 (2007). A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* Nor will a complaint that provides mere "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.,* at 557.

Turning to the instant matter, the Complaint fails to identify a single act by Defendant that could reasonably be construed as a violation of his constitutional rights. The entirety of Plaintiff's claim against Defendant is contained in his assertion that Defendant "issued specific directives and guidance to his co-defendants that governed the treatment of [P]laintiff" and that "at [Defendant's] direction, [P]laintiff was remanded back to prison and subject to great indignities when he was unlawfully incarcerated and held in solitary confinement." Compl. ¶ 36. Yet, Plaintiff fails to provide any facts to support this vague and conclusory claim. Critically, Defendant is not mentioned once in the recitation of facts when it comes to the alleged deprivation of constitutional

rights – only the actions of the co-Defendants are described.  Nor does Plaintiff offer a single fact in support of his belief that Defendant directed or guided the actions of the co-Defendants. Notably, Plaintiff fails to even articulate the "specific directives" that Defendant purportedly gave to the co-Defendants – he merely broadly asserts that he ordered that Plaintiff be "remanded back to prison," which, in and of itself, is well withing the statutory authority of 18 U.S.C. § 3621(b). *See* 18 U.S.C. § 3621(b) (conferring sole authority and discretion in the BOP to "designate the place of [a] prisoner's imprisonment," a determination which is "not reviewable by any court."); *see also McKune v. Lile*, 536 U.S. 24, 39 ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise.").  Therefore, even viewed in a light most favorable to Plaintiff, there is simply no factual basis to support his claim that Defendant violated his constitutional rights.

Seemingly aware of the Complaint's *prima facie* shortcomings, Plaintiff extraneously describes a supposed "long line of retaliatory measures" in Defendant's past. Compl. ¶ 104.  Yet, in doing so, Plaintiff mistakenly points to actions undertaken by other individuals and incorrectly attributes them to Defendant.  First, Plaintiff points to a lawsuit that sought an injunction to prevent the publication of Mary Trump's book, *Too Much and Never Enough*.  Contrary to Plaintiff's contention, this lawsuit was filed by Defendant's brother, Robert Trump, not Defendant. *See generally* Declaration of Alina Habba, Esq., Exhibit A.  Second, Plaintiff points to a cease-and-desist letter which was sent to Plaintiff warning that the publication of his book would violate a nondisclosure agreement he had signed; again, contrary to Plaintiff's belief, this letter was sent by attorney Charles Harder on behalf of the *Trump Organization*, not Defendant. *See generally* Habba Decl., Ex, B.  Since Defendant was not responsible for the filing of either the injunctive action or the submission of the cease-and-desist letter, neither event has any bearing on this case.  More

17

importantly, these supposed "retaliatory measures"—petitioning a court for injunctive relief and sending a 'cease and desist' letter in response to a threatened violation of an non-disclosure agreement—are a valid and legitimate exercise of one's legal rights which are in no way indicative of a 'retaliatory' pattern of behavior. These actions are certainly a far cry from the bad faith conduct alleged in the Complaint.

Plaintiff also attempts to point to July 23, 2020 Order (the "Order") issued by the Hon. Alvin K. Hellerstein in the matter of *Cohen v. Barr* as proof that his constitutional rights were infringed upon. *See* Compl., Ex. A. Yet, Defendant was not a party to the *Cohen v. Barr* matter and the Order does not identify, refer to, or relate to Defendant, nor does it adjudicate his rights in any way. Therefore, as it relates to Defendant, the Order is wholly irrelevant.

Further, although not plead in such a manner, the vague and conclusory allegations contained in the Complaint fail to adequately allege that Defendant entered into an agreement or had a meeting of the minds with the other co-Defendants to sufficiently maintain a conspiracy claim under *Bivens*. *See Ashcroft*, 585 F.3d at 569 ("Broad allegations of conspiracy are insufficient; the plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." (citing *Webb v. Goord,* 340 F.3d 105, 110 (2d Cir.2003)); *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) ("Diffuse and expansive allegations ... will not suffice to sustain a claim of governmental conspiracy to deprive appellants of their constitutional rights."); *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights" will not survive dismissal.") *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983); *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) ("A plaintiff must make an effort to provide some details of time and

place and the alleged effects of the conspiracy ... [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end.").

Finally, the Seventh Cause of Action is so overbroad and ambiguous that it fails to even differentiate between any of the Defendants and merely groups them all together without distinguishing any specific acts committed by individual defendants. *See Arar*, 585 F.3d 559 (finding that plaintiff failed to state a cognizable *Bivens* claim when the complaint grouped together "undifferentiated" defendants and "fail[ed] to specify any culpable action taken by any single defendant.").

Based on the foregoing, the Complaint is facially defective as against Defendant and, therefore, must be dismissed as a matter of law.

## **CONCLUSION**

For the foregoing reasons, Defendant, Donald J. Trump, respectfully requests this Court grant his motion to dismiss the Complaint pursuant to FRCP 12(b)(1) and 12(b)(6).

Dated: April 4, 2022        Respectfully submitted,
     New York, New York

Alina Habba, Esq.
**HABBA MADAIO & ASSOCIATES LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
     -and-
112 West 34th St, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
*Attorneys for Defendant, Donald J. Trump,*
*former President of the United States*