

April 8, 2022

The Honorable Lewis J. Liman

RE: *Michael Cohen v. USA, Trump, Barr, et. al.*
*Docket#* 1:21-cv-10774

Judge Liman,

    Thank you, again, for allowing me to appear (post-surgery) via telephone yesterday while my co-counsel and Mr. Cohen appeared in person.

    I ask that Your Honor accept this as a supplement to my arguments yesterday regarding discovery prejudice and delays impacting my client as new information has been revealed.

    Unbeknownst to us on the plaintiff's side, although likely known to counsel for defendant Trump[1], while we were conferencing before Your Honor yesterday breaking news reported the NYS Attorney General filed a motion for contempt against defendant Trump (copy of affirmation annexed hereto) that argued a blatant disregard by defendant Trump for Orders and stipulations entered into by the parties and So Ordered by the Honorable Justice Arthur Engoron, J.S.C. Claims by New York's chief legal officer alleged defendant Trump's continued failure to comply with the above Orders to timely exchange discovery should result in significant sanctions.

    Timing of the Attorney General's motion was important. In two different Courthouses across the street from one another, and at or about the same time, two pending cases involving defendant Trump were in the spotlight. In the infancy of our action Your Honor raised questions of a discovery stay and consequential delays and prejudices therefrom. Across the street, and after years of litigation in the New York State Supreme Court, defendant Trump was accused by the NYS Attorney General of what I expressed "concern" about should a stay be granted by Your Honor. In both pending actions, the same defense counsel represented defendant Trump and argued in favor of a stay in Your Court. Defense counsel now find themselves defending their client of continuing allegations of

---

[1] Defendant Trump is represent by the same lawyers in the instant action as that being prosecuted against him by the NYS Attorney General - Supreme Court, NY County Index 451685/2020.



discovery abuses that has allowed for the delay of proceeding, all in violation of multiple stipulated agreements and Orders.

By this correspondence I cannot possible brief the half-century long reporting of defendant Trump's *playbook* to disregard, disparage and evade judicial authority, Judges and even the DOJ [https://www.newsweek.com/2016/11/11/donald-trump-companies-destroyed-emails-documents-515120.html, https://www.townandcountrymag.com/society/politics/a30455536/president-trump-impeachment-playbook/, https://www.politico.com/magazine/story/2018/08/23/donald-trump-jeff-sessions-justice-department-war-219592/]. Instead I bring breaking news to Your attention to be weary of requests for stays, delays, adjournments, along with the disregard for deadlines. Defendant Trump has a documented strategy of wearing down his adversaries with the "three Ds" — delays, defaults and defiance. It seems that notwithstanding said history, NY Attorney General James allowed her good faith efforts to be manipulated and is now attempting to learn from and correct the aforementioned history that infiltrated, delayed and prejudiced her pending NY Supreme Court action — we can learn from that too by keeping discovery on a short leash. We must not allow our important and what should be historic discovery of a U.S. President, his loyalists, and their adjudicated unconstitutional retaliation and imprisonment of a US citizen on US soil to be drawn out or stonewalled, nor deal with spoliation issues, as I already fear has occurred. Indeed, defendant Trump is currently being investigated by DOJ regarding removal of presidential records to Mar-A-Lago, a separate spoliation investigation by the National Archives and Records Administration, and still another related Congressional investigation (Carolyn Maloney, D-NY - Chair) by the House Committee on Oversight and Reform- all at considerable cost.

I thank you for considering this supplement to yesterday's discussion regarding the timely exchange of material and necessary discovery, interrogatories, etc.

Sincerely,<br/>
*Law Offices of Jeffrey K. Levine*<br/>
_____<br/>
JEFFREY K. LEVINE, ESQ.

JKL/
encl.

LAW OFFICES OF JEFFREY K. LEVINE
340 WEST 57TH STREET, SUITE 11E, NEW YORK CITY 10019 | 212.721.9600 | JL@NYadvocate.com [not for legal service]

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>       Petitioner,<br><br>  -against-<br><br>THE TRUMP ORGANIZATION, INC.; DJT HOLDINGS LLC; DJT HOLDINGS MANAGING MEMBER LLC; SEVEN SPRINGS LLC; ERIC TRUMP; CHARLES MARTABANO; MORGAN, LEWIS & BOCKIUS, LLP; SHERI DILLON; DONALD J. TRUMP; IVANKA TRUMP; and DONALD TRUMP, JR.,<br><br>       Respondents. | Index No. 451685/2020 |

## AFFIRMATION OF COLLEEN K. FAHERTY

COLLEEN KELLY FAHERTY, an attorney duly admitted to practice before the Courts of this State, does hereby state the following pursuant to penalty of perjury:

1.   I am an Assistant Attorney General in the Office of Letitia James, Attorney General of the State of New York, who appears on behalf of the People of the State of New York in this special proceeding.

2.   I submit this declaration in support of Petitioner's Motion for Contempt pursuant to Judiciary Law §§ 753, 758. The facts set forth herein are based upon my personal knowledge and/or a review of the files in my possession.

1

3. The Office of the Attorney General ("OAG") opened this investigation in March 2019 (the "Investigation"), following the Congressional testimony of Michael Cohen (on February 27, 2019), in which Cohen produced copies of Donald J. Trump's financial statements for years 2011-2013 and testified that the financial statements inflated the values of Mr. Trump's assets to obtain favorable terms for loans and insurance coverage, while also deflating assets in order to reduce any associated real estate taxes. OAG subsequently determined that the financial statements were provided to financial institutions, and thus issued dozens of subpoenas for documents and testimony to investigate whether such submissions were a violation of law.

4. Since August 24, 2020, OAG has been engaged in ongoing aspects of a special proceeding before this Court, New York Supreme Court, New York County, regarding certain subpoena enforcement issues that have arisen during the course of OAG's Investigation. *See People v. The Trump Organization*, Index No. 451685/2020 (the "NY Proceeding").

5. Whereas this Court expressed its willingness to be "available to resolve matters as they have arisen among the parties" in the NY Proceeding, after disputes arose "regarding the Trump Organization's document collection and production in response to OAG subpoenas," the Trump Organization and OAG stipulated on September 2, 2021, to certain terms concerning the company's ongoing subpoena responses, as well as the potential need to "retain at [the Trump Organization's] expense, an independent third-party e-discovery firm … to oversee the identification, collection, and review of electronically stored information … responsive to OAG's subpoenas." *See* NYSCEF No. 314. The Trump Organization subsequently complied with the request to retain a third-party eDiscovery firm, which was HaystackID.

6. On March 18, 2022, however, based on the Trump Organization's conduct concerning HaystackID, OAG sought Court intervention to enforce the remaining terms of the

September 2, 2021 order and ensure full compliance with the remaining document productions owed under OAG's subpoenas. NYSCEF No. 661.

7. After a lengthy hearing on March 28, 2022, this Court ordered HaystackID to provide detailed weekly reports and complete its obligations by April 22, 2022, and ordered the Trump Organization to provide a detailed report by April 20, 2022 and comply in full with all aspects of OAG's subpoenas by April 29, 2022, including the complete production of all documents by April 15, 2022. NYSCEF No. 667.

8. On November 1, 2021, OAG contacted counsel for the Trump Organization about obtaining sworn testimony from, *inter alia*, Donald J. Trump. After multiple communications on the issue, on December 2, 2021, individual counsel accepted service from OAG of a subpoena *duces tecum* and *ad testificandum* on Donald J. Trump. The subpoena sought documents to be produced by December 17, 2021 and Mr. Trump's testimony on January 7, 2022.

9. Mr. Trump's counsel initially objected to the document production date and refused to commit to a date for Mr. Trump's testimony; however, by December 3 during a telephonic discussion, counsel agreed that he would produce responsive documents in advance of any scheduled testimony.

10. Subsequently, on December 9, 2021, counsel informed OAG that Mr. Trump would move to quash the subpoena.

11. After multiple communications on the proper procedures for seeking court intervention concerning the subpoena to Mr. Trump and others, on December 30, 2021, counsel for Donald J. Trump, Ivanka Trump, and Donald Trump, Jr. stipulated to appear in the NY Proceeding before this Court in order to "make any motion to quash [subpoenas issued to Donald J. Trump, Ivanka Trump, and Donald Trump, Jr.] or for related relief." This Court "so ordered"

3

the stipulation on January 3, 2022. NYSCEF No. 318.

12. Mr. Trump moved to quash OAG's subpoena on January 3, 2022, and subsequently OAG cross-moved to compel Mr. Trump's compliance with OAG's subpoena. NYSCEF Nos. 321, 357. After full briefing, completed on February 15, 2022, this Court held arguments on the merits of the parties' motions.

13. On February 17, 2022, after arguments that day, this Court denied Mr. Trump's motion to quash and granted OAG's cross-motion to compel compliance. Specifically, this Court ordered Mr. Trump to "comply in full, within 14 days of the date of this order [by March 3, 2022], with that portion of the Office of the Attorney General's subpoena seeking documents and information," in addition to appearing for testimony within 21 days of the Order. NYSCEF No. 654 (the "February 2022 Order").

14. On February 28, 2022, Mr. Trump, alongside co-counsel for respondents Ivanka Trump and Donald Trump, Jr., filed a notice of entry of this Court's February 17 order and a notice of appeal. NYSCEF Nos. 655, 656.

15. The notice filed with the First Department identified three issues on appeal, however, as confirmed in subsequent discussions with counsel, Mr. Trump was not disputing the portion of the order concerning OAG's subpoena for documents. NYSCEF No. 656. Specifically, between February 28 and March 3, counsel had multiple discussions concerning an appellate briefing schedule and during a phone discussion on March 1, counsel represented that they "were not appealing on documents."

16. During further discussions on March 1, counsel acknowledged that this Court's February 2022 Order required a document production in two days' time (by March 3), but advised that Mr. Trump would be unlikely to be able to comply with that deadline because of the potential

locations they needed to search for documents. According to counsel, although "almost everything was at Trump Tower," they needed to "go look at Mar-a-Lago" for documents. As such, counsel wanted to discuss an extension of Mr. Trump's document production deadline, in addition to negotiating a schedule for appealing this Court's February 2022 Order.

17. Initially, counsel sought an extension to Mr. Trump's document production deadline to align with the Trump Organization's production schedule because counsel could not be certain that Mr. Trump wouldn't be able to certify production if the Trump Organization wasn't done with its productions. OAG rejected that proposal on March 2, stating that: "[OAG] sought an order on the production of documents and laid out the history of the production issues in our papers. Completing and certifying the search and production of documents is the obligation of DJT and the Trump Org, and they have had plenty of notice. If the documents are with the Trump Org they were subpoenaed in December 2019. [OAG] identified missing documents in April 2021; flagged the DJT document issues in July 2021; and let the Trump Org try to complete production by October 2021. When [the productions] didn't get done, the company retained an outside third party to address the production issues in December 2021. [OAG] sent the subpoena for DJT three months ago on December 1, 2021. So completing the process for DJT documents by the end of this month [March] is eminently reasonable." A true and correct copy of this correspondence is attached as "Exhibit A." Counsel subsequently agreed that the parties could stipulate to a March 31 deadline for Mr. Trump's document production.

18. After multiple conversations negotiating the terms of a briefing and document production schedule, OAG and counsel executed two stipulations filed in the First Department and in New York Supreme Court, New York County. NYSCEF Nos. 657-659.

5

19. Specifically, the parties filed the stipulated briefing schedule with the First Department, and simultaneously filed an extension of the deadlines ordered in the February 2022 Order. As OAG explained to this Court on March 3, "In the interest of efficiency for both the parties and the court, and to allow time for the First Department to hear the appeal, we have therefore agreed to the attached Stipulation and Proposed Order to extend the time for the Trump Respondents to appear for testimony until two weeks after a decision by the First Department … This extension would avoid the need for separate briefing over an application by the Trump Respondents for an interim stay during the pendency of the appeal. Given the expedited merits briefing we believe a stipulated extension of the testimony date will promote judicial economy without causing undue delay. The Stipulation and Proposed Order would also extend the date for the complete production of documents [by Mr. Trump] to March 31, 2022." NYSCEF No. 657.

20. This Court "so ordered" the parties' stipulation and proposed order (which included the March 31 document production deadline for Mr. Trump) that same day. NYSCEF No. 660.

21. On March 31, 2022, Mr. Trump served on OAG a "response" to OAG's document subpoena, failing to provide any documents, averring broadly and without any specificity to the Trump Organization's prior productions as solely responsive to OAG's subpoena. A true and correct copy of Mr. Trump's response is attached as "Exhibit B" (the "Response"). Additionally, counsel Michael Madaio submitted an "affidavit of compliance" with Mr. Trump's Response, attesting that he "personally made or caused others to make a diligent search of all of [Donald J. Trump's] relevant records for materials sought by the Subpoena, in accordance with the instructions and definitions set forth in the Subpoena." Exh. B, p. 17 at ¶ 3. Mr. Madaio further certified that Mr. Trump's "productions and responses to the Subpoena are complete and correct

to the best of my knowledge and belief." *Id.*, p. 17-18 at ¶ 4.

22. Mr. Madaio's woefully deficient certification fails to include any details concerning his diligent inquiry into responsive records, which records were sought, what locations were searched, or what parties collaborated with him or at his direction to conduct such a search. Additionally, Mr. Madaio's certification and Mr. Trump's Response both fail to identify where in the Trump Organization's productions responsive records from Mr. Trump's custodial files are located—nowhere in the document production does Mr. Trump or Mr. Madaio identify Bates numbers or otherwise describe with specificity the relevant documents previously produced purportedly responsive to OAG's subpoena.

23. To date the Trump Organization has produced approximately ten documents from Mr. Trump's custodial files, based on the limited metadata available for OAG's review.

24. Indeed, there have been only two productions of documents purportedly derived from Mr. Trump's custodial files: one production, consisting of three documents on July 23, 2021 (TTO_214579-214583); and a second production on February 9, 2022 (TTO_05439138-5439676), purportedly derived from Mr. Trump's "chron files," consisting of seven documents, totaling 542 pages. The second production on February 9, however, appears incomplete and to some degree unresponsive; it contains incomplete correspondence, and extraneous, irrelevant material, such as a document discussing whether a Trump Organization Security guard should receive a permit to carry a handgun. TTO_05439675.

25. There are several categories of documents that logically should be part of Mr. Trump's production but have not been produced by him or the Trump Organization, including litigation papers (deposition transcripts and exhibits) from Mr. Trump's defamation lawsuit against the author and publisher of "TrumpNation" concerning Mr. Trump's networth,

responsive tax and audit documents in both Mr. Trump's personal custody as well as such material maintained at the Trump Organization's offices, correspondence authorized by and signed off by Mr. Trump, and Mr. Trump's personal insurance documents relating to policies issued on the basis of his statements of financial condition. Moreover, Mr. Trump through his recent public press release, *see* NYSCEF No. 651, has acknowledged that he has in his possession *at least one* statement of financial condition for the year ending June 30, 2014, which would be directly responsive to OAG's subpoena – despite his counsel's attestation that no responsive documents exist -- but which he has failed to produce.

26. In the Trump Organization's most recent status report concerning its subpoena response, the Organization identified that only the search for records from General Counsel Alan Garten's mobile phone remains ongoing. Attached as "Exhibit C" is a true and correct copy of the most recent status report.

27. On April 4, 2022, HaystackID provided a status report identifying its ongoing forensic analysis of the Trump Organization's subpoena response, which indicates that Mr. Trump has failed to provide any answers to HaystackID's written interview questions. HaystackID provided a copy of the report to the Court and the parties via electronic mail on April 4, 2022. As included in the report, "HaystackID made a request to [Donald J. Trump] for written interview responses on March 30, 2022. HaystackID is awaiting return of the written interview responses." Report at 10. In addition, HaystackID has received no response from Mr. Trump's longtime executive assistant Rhona Graff; "HaystackID attempted to contact [Rhona Graff's] counsel several times but has received no response whatsoever." Id. at 11.

28. The Memorandum of Law in support of the Attorney General's Civil Contempt Motion against Respondent Donald J. Trump contains information related to third-party law

8

enforcement agencies' work whose premature revelation may cause hardship to any potential third-party investigatory work, as well as unnecessary and premature reputational harm, if unnecessarily revealed. Accordingly, OAG submits this document for public filing with redactions of any such sensitive information. This Court should permit the redaction of such sensitive information.

29. Pursuant to Sections 753 and 774 of the Judiciary Law, the Court should punish respondent Donald J. Trump for civil contempt of Court by fine or imprisonment or both for failure to comply with the Court's February 2021 Order, which failure did defeat, impair, impede and prejudice the rights of petitioner OAG, as described herein.

30. OAG has had to litigate over the enforcement of the subpoena served on Mr. Trump for months based on Mr. Trump's dilatory conduct—which forced OAG to move to compel; forced OAG to oppose a motion to quash; and forced OAG to sift through voluminous productions that fail to identify documents from Mr. Trump's custodial files or provide any information about what locations were searched or when.

31. In accordance with CPLR Rule 2217(b), I affirm that the Attorney General has made no prior application for the relief requested herein before this or any other court.

Dated: New York, New York
       April 7, 2022

                                                       /s/ *Colleen K. Faherty*
                                                       Colleen K. Faherty
                                                       Assistant Attorney General