## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MICHAEL D. COHEN,

               Plaintiff,

    v.

UNITED STATES OF AMERICA, DONALD J. TRUMP, former President of the United States, WILLIAM BARR, former Attorney General of the United States, MICHAEL CARVAJAL, Director of the Bureau of Prisons, JON GUSTIN, Administrator of the Residential Reentry Management Branch of the Bureau of Prisons, PATRICK McFARLAND, Residential Reentry Manager of the Federal Bureau of Prisons, JAMES PETRUCCI, Warden of FCI Otisville, ENID FEBUS, Supervisory Probation Officer of the United States Probation and Pretrial Services ADAM PAKULA, Probation Officer of the United States Probation and Pretrial Services, and JOHN and JANE DOE (1-10) agents, servants, and employees of the United States,

               Defendants.

Case No.: 1:21-cv-10774 (SRU)

## DEFENDANT DONALD J. TRUMP'S MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Alina Habba, Esq.
**HABBA MADAIO & ASSOCIATES, LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
     -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Phone: (908) 869-1188
Fax: (908)-450-1881
Email: ahabba@habbalaw.com
*Attorneys for Defendant, Donald J. Trump,*
*former President of the United States*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

ARGUMENT ............................................................................................................................1

I.    Plaintiff's Bivens Claim is Barred By Presidential Immunity.................................................1

II.   The Complaint Does Not Present a Cognizable Bivens Claim...............................................7

CONCLUSION...........................................................................................................................9

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v Biden*,
  CV-21-01150-PHX-JAT, 2021 WL 3472740 (D. Ariz., Aug. 6, 2021) ...............................2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................................8

*Barret v. Harrington*,
  130 F.3d 246 (6th Cir. 1997) .........................................................................................5

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
  403 U.S. 388 (1971),...........................................................................2, 3, 6, 7, 8, 9

*Brown v Obama*,
  10-CIV-6426-LBS, 2011 WL 2207569 (S.D.N.Y., May 31, 2011)......................................2

*Clinton v. Jones*,
  520 U.S. 681 (1997).................................................................................................1, 2, 5

*Corr. Servs. Corp. v. Malesko*,
  534 U.S. 61 (2001)...........................................................................................................8

*DeLong v. IRS*,
  908 F.2d 966, 1990 WL 101402 (4th Cir. 1990) ..............................................................4

*Egbert v. Boule*,
  21-147, 2022 WL 2056291 (U.S. June 8, 2022)................................................................8

*Jackson v Bush*,
  448 F.Supp 2d 198 (D.D.C. 2006) ...................................................................................2

*Klayman v. Obama*,
  125 F.Supp.3d 67 (D.D.C. 2015) .....................................................................................5

*Lewis v. Clarke*,
  137 S. Ct. 1285 (2017).....................................................................................................3

*Nixon v. Fitzgerald*,
  457 U.S. 731 (1982)..............................................................................................1, 2, 3, 4, 5

*Rouse v. Trump,*
20-CV-12308, 2020 WL 6701899 (E.D. Mich., Nov. 13, 2020) ................................................2

*Screws v. United States*,
325 U.S. 91 (1945)................................................................................................................3

*Wilkie v. Robbins,*
551 U.S. 537, 550 (2007)........................................................................................................8

*Ying Jing Gan v. City of New York,*
996 F.2d 522 (2d Cir.1993)....................................................................................................4

*Ziglar v. Abbasi*,
137 S. Ct. 1843 (2017) ........................................................................................................8, 9

**Rules and Statutes**

FRCP 12(b)(1) ................................................................................................................9

FRCP 12(b)(6) ................................................................................................................9

The defendant, Donald J. Trump, former President of the United States ("Defendant"), by and through his undersigned attorneys, Habba Madaio & Associates LLP, respectfully submits this memorandum of law in further support of Defendant's motion to dismiss filed on April 4, 2022 (the "Motion") (ECF Doc. Nos. 41-43) and in reply to the opposition filed by the plaintiff, Michael D. Cohen ("Plaintiff"), on May 27, 2022 (the "Opposition") (ECF Doc. Nos. 61-62). As set forth herein, Defendant's Motion must be granted and he must be dismissed from this action.

## ARGUMENT

**I.    PLAINTIFF'S *BIVENS* CLAIM IS BARRED BY PRESIDENTIAL IMMUNITY.**

At the outset, as set forth at length in Defendant's moving papers, there is no question that that the single cause of action asserted by Plaintiff against Defendant—a *Bivens* claim—is barred by the doctrine of presidential immunity.[1]

In his Opposition, Plaintiff spends the majority of his Opposition expounding on the constitutional beliefs of various historical figures, such as Theodore Roosevelt and James Madison, and proclaiming that the mere notion of presidential immunity is an affront to the nation's democracy.  Tellingly, what Plaintiff does not do is cite to any authoritative case law or present a single viable counter-argument as to why presidential immunity does not apply here. Nor is he able to. Indeed, it is well settled that the doctrine of presidential immunity precludes a *Bivens* claim from being maintained against a current or former President for acts taken while in office. *See generally Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982) ("[A] former President of the United States[] is entitled to absolute immunity from damages liability predicated on his official acts."); *see also id.* at 770 (White, J., dissenting) ("[I]t is difficult to read the [majority's] opinion coherently as standing

---

[1] The type of absolute immunity applicable to a President is commonly referred to as "presidential immunity." *See Nixon*, 457 U.S. at 756 ("[W]e think it appropriate to recognize absolute Presidential immunity. . ."); *Clinton v. Jones*, 520 U.S. 681, 696 ("This description is consistent with . . . the doctrine of Presidential immunity.").

for any narrower proposition: Attempts to subject the President to liability . . . through a *Bivens* proceeding would violate the separation of powers."); *Rouse v. Trump*, 20-CV-12308, 2020 WL 6701899, at *4 (E.D. Mich., Nov. 13, 2020) ("[T]o the extent plaintiffs seek money damages from the President pursuant to *Bivens[]*, the President "is entitled to absolute immunity from damages liability predicated on his official acts."); *Allen v Biden*, CV-21-01150-PHX-JAT, 2021 WL 3472740, at *1 (D. Ariz., Aug. 6, 2021) ("The Supreme Court has also held that the President of United States is entitled to absolute immunity from *Bivens* actions) (citing *Nixon*, 457 U.S. at 758); *Brown v Obama*, 10-CIV-6426-LBS, 2011 WL 2207569, at *2 (S.D.N.Y., May 31, 2011) ("Were Plaintiff to bring this [*Bivens*] action . . . against the President in his individual capacity, it would likewise be dismissed, as the President 'is entitled to absolute immunity from damages liability predicated on his official  acts.'") (citing *Nixon*, 457 U.S. at 749); *Jackson v Bush*, 448 F.Supp 2d 198, 201-02 (D.D.C. 2006) ("Since plaintiff brings this suit against President Bush for actions he allegedly took 'within the scope of his lawful authority,' the President has absolute immunity from this lawsuit in his individual capacity.") (citing *Nixon* 457 U.S. at 756).

Any other outcome would simply defy logic. If Defendant's alleged conduct was outside of the "outer perimeter of his official responsibility" as President, then his actions could not possibly have been carried out "under [the] color of his authority" as is required under *Bivens*. *See generally Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971). Indeed, even if Defendant's alleged acts could be construed as being "purely private" in nature—despite the Complaint alleging the exact opposite—such a finding would necessarily impair Plaintiff's ability to maintain a *Bivens* claim against Defendant. *See Clinton v. Jones*, 520 U.S. 681, 696 (1997) ("With respect to acts taken in in his 'public character'—that is, official acts—the President may be disciplined principally by impeachment, not by private lawsuits for damages. But he is otherwise

subject to the laws for his purely private acts."); *compare to Screws v. United States*, 325 U.S. 91, 111 (1945) (noting that "acts of officers in the ambit of their personal pursuits" do not qualify as acts committed "under the color of law."). In other words, either presidential immunity applies, or *Bivens* does not. In either scenario, Plaintiff's claim fails.

Seemingly aware of this fact, Plaintiff resorts to arguing that such an outcome is akin to treating Defendant "like a king" and "risks shattering the very foundation our Republic is built upon." Pl. Mem. at 8 (ECF Doc. No. 61). Aside from the sheer absurdity of his argument, Plaintiff neglects to recognize the important interests served by the doctrine of presidential immunity. The Supreme Court has stressed that presidential immunity it is "a functionally mandated incident of the President's unique office, rooted in the constitutional tradition of the separation of powers and supported by our history" and has acknowledged that there "exists the greatest public interest" in upholding the protections afforded thereunder. *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982). In fact, the Supreme Court has specifically noted that the *lack* of presidential immunity would be a "detriment[] not only [to] the President and his office, but also the Nation that the Presidency was designed to serve." *Id.* at 753. It has also squarely rejected Plaintiff's contention that the application of presidential immunity would effectively place Defendant "above the law." Pl. Mem. at 8; *compare to Nixon*, 457 U.S. at 758 ("The existence of alternative remedies and deterrents *will not place the President 'above the law*.'") (emphasis added).

Nonetheless, Plaintiff contends in his Opposition that presidential immunity does not apply because Defendant is "not being sued in his official capacity." Pl. Mem. at 9. In so arguing, Plaintiff misses the point entirely. The whole purpose of absolute immunity is to shield a federal officer from liability for civil claims asserted against him in his *individual* capacity. *See Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017) ("An officer in an individual-capacity action ... may be able to assert *personal*

immunity defenses, such as, for example, absolute prosecutorial immunity in certain circumstances.") (emphasis added); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("[P]ersonal privilege[s] of absolute or qualified immunity . . . are available to governmental officials . . . with respect to damage claims asserted against them in their individual capacities."). Thus, contrary to Plaintiff's contention, mere reference in the Complaint that Defendant is being sued in his 'individual capacity' does not in any way negate his entitlement to the immunities afforded for his official acts.

In other words, regardless of whether Defendant is sued in his 'official' or 'individual' capacity, the relevant inquiry is whether the alleged conduct was within the "'outer perimeter' of his official responsibility." *Nixon*, 457 U.S. at 756; *see also DeLong v. IRS*, 908 F.2d 966, 1990 WL 101402, at *1 (4th Cir. 1990) ("The only distinction … between personal-capacity and official-capacity suits is on whom the plaintiff is seeking to impose liability; in both cases, the official is acting under color of law."). Here, the Complaint, on its face, plainly and unambiguously confirms that Defendant is being sued for conduct within the scope of his official authority. *See, e.g.*, Compl. ¶ 47 ("[A]t all relevant times herein, the individual defendants *acted within the course and scope of their employment and under the color of law*.") (emphasis added); *id.* ¶ 142 ("[T]he conduct of all defendants was *accomplished under color of law*.") (emphasis added). Plaintiff even acknowledges in his Opposition that his cause of action is premised upon Defendant's "use[] [of] the power of his office to order his subordinates," Pl. Mem. at 9, echoing allegations in the Complaint that Defendant "issued specific directives and guidance to his co-defendants," Compl. ¶ 37. Thus, by Plaintiff's own admission, Defendant's conduct was within the scope of his official authority and therefore covered by the doctrine of presidential immunity.

Plaintiff attempts to circumvent this fact by characterizing Defendant's alleged conduct as

unlawful, retaliatory or otherwise wrongful. Yet, in doing so, Plaintiff fails to recognize that "immunities are grounded in 'the nature of the function performed," rather than in the lawful or unlawful motivations of the person performing them. *Clinton*, 520 U.S. at 693. Indeed, presidential immunity is "not overcome by 'allegations of bad faith or malice.'" *Klayman v. Obama*, 125 F.Supp.3d 67, 86 (D.D.C. 2015) (quoting *Barret v. Harrington*, 130 F.3d 246, 254-55 (6th Cir. 1997); even "alleged wrongful acts . . . lay well within the outer perimeter" of the President's authority. *Nixon*, 457 U.S. at 757. Thus, despite Plaintiff's best effort to argue otherwise, inquiry into the subjective motive or intent underlying the alleged conduct is simply improper. *See Nixon*, 457 U.S. at 756 ("[A]n inquiry into the President's motives could not be avoided under the kind of 'functional' theory asserted both by respondent and the dissent. Inquiries of this kind could be highly intrusive.").

Plaintiff also claims that presidential immunity does not apply because Defendant is no longer a sitting President. This argument is plainly without merit since it is axiomatic that "a *former* President of the United States is entitled to absolute immunity from damages liability predicated on his official acts." *Nixon*, 457 U.S. at 749; *see also* Clinton, 520 U.S. at 693 ("[T]hat rationale provided the principal basis for our holding that a *former* President of the United States was 'entitled to absolute immunity for damages liability predicated on his official acts.'") (citing *Nixon*, *supra*) (emphasis added). Thus, the question is simply whether the allegations in the Complaint relate to a time when Defendant *was* in office. Here, that is clearly the case. *See* Compl. ¶ 37 ("At all relevant times herein, defendant Donald J. Trump was President of the United States."). Therefore, Plaintiff's argument that Defendant is not entitled to presidential immunity for conduct that is alleged to have occurred while he was a sitting President must be wholly disregarded.

Plaintiff's attempt to analogize the instant matter to the court's October 27, 2020 decision in

*Carroll v. Trump*, 498 F.Supp.3d 422 (S.D.N.Y. 2020) fares no better. First of all, the decision in *Carroll*—another matter lying in the Southern District of New York—is not binding upon this court and is currently pending appeal before the Second Circuit. Nor is the *Carroll* decision relevant in any way since the court's holding did not involve the issue of presidential immunity. In *Carroll*, the court's inquiry was focused on whether the President could be construed as an "employee" under the Federal Torts Claim Act (FTCA) and, if so, whether the actions alleged were within the "scope of his employment." *See generally Carroll*, *supra*. The court's analysis was governed by Washington D.C. law, not New York, and involved an entirely different line of inquiry under the FTCA. See Id. at 450-456. In fact, the *Carroll* court even went out of its way to acknowledge this distinction, recognizing that "the absolute immunity doctrine is different than D.C.'s scope of employment doctrine." *Id.* at 454. Further, since the court found that the President did not qualify as an "employee" under the FTCA, its entire line of reasoning regarding the 'scope of employment' inquiry was entirely *in dicta* and, even then, has no bearing on the instant matter since the court effectively found that Defendant's conduct could not have been done "in furtherance of the duties he owes to his employer" since the President has no employer. Id. at 456. In short, the *Carroll* decision bears no relevance whatsoever to the instant matter. Plaintiff's attempt to cherry-pick various out-of-context quotations from that decision is disingenuous and merely indicative of the dearth of case law supporting his argument that presidential immunity does not apply here.

Based on the foregoing, due to the interplay between presidential immunity and *Bivens*, there is no conceivable manner in which Plaintiff can maintain a *Bivens* claim against Defendant that would not be otherwise barred by presidential immunity.

## II.     THE COMPLAINT DOES NOT PRESENT A COGNIZABLE *BIVENS* CLAIM.

Assuming *arguendo* that Plaintiff's claim is somehow able to survive past this initial, threshold issue, the Complaint still fails because it does not put forth a cognizable claim under *Bivens*.

In his Opposition, Plaintiff fails to meaningfully address Defendant's argument that the Complaint does not plead sufficient facts to set forth a cognizable cause of action against Defendant. The limited response he does provide is quite telling. For instance, despite his Opposition including a four page "Factual Background"—wherein Plaintiff describes the allegations underpinning his cause of action—Plaintiff fails to mention or identify Defendant or even allude to single act that he is alleged to have taken that harmed Plaintiff. Without any relevant facts to point to, Plaintiff instead relies exclusively on the Order of the Hon. Alvin K. Hellerstein, J.S.C. dated July 23, 2020 in the matter of *Cohen v. Barr*, 20-cv-5614 (the "Hellerstein Order") in attempting to establish a factual predicate for his *Bivens* claim.  Yet, this approach is entirely misguided since Defendant was not a defendant in the *Cohen v. Barr* action and therefore not a party to the Hellerstein Order. As a result, the Hellerstein Order does not adjudicate Defendant's rights or otherwise imply that he was involved in the purported misconduct. Simply put, the Hellerstein Order is entirely irrelevant to Plaintiff's claim against Defendant. Beyond that, Plaintiff's remaining arguments are entirely lacking in substance and are merely conclusory in nature. *See, e.g.,* Pl. Mem. at 11 ("Plaintiff has alleged with sufficient specificity that defendant Trump ordered and directed his subordinates to unlawfully incarcerate the plaintiff[.]"); *id.* at 13 ("Plaintiff has given a conscientious accounting of the facts within his complaint demonstrating various 1st, 4th, and 8th amendment violations committed by the defendants[.]"). These arguments are clearly without merit and do not warrant further elaboration.

Even if Plaintiff had provided a sufficient factual basis, Plaintiff has failed to make the

minimum required showing that he has an actionable constitutional claim under *Bivens*. First, as discussed at length in Defendant's moving papers, this Court should engage in the 'disfavored' judicial activity" of extending *Bivens* to apply in new contexts. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *see also Wilkie v. Robbins,* 551 U.S. 537, 550, (2007) ("[I]n most instances we have found a *Bivens* remedy unjustified."); *Corr. Servs. Corp. v Malesko,* 534 U.S. 61, 68 (2001) ("[W]e have consistently refused to extend *Bivens* liability to any new context or new category of defendants."). Plaintiff has not offered any argument to the contrary.

Second, the main crux of Plaintiff's *Bivens* claim is that Defendant, along with the individual co-defendants, retaliated against Plaintiff for exercising his right to free speech in violation of the First Amendment. However, the Supreme Court recently confirmed that a First Amendment retaliation cannot be maintained under *Bivens*. *See Egbert v. Boule*, 21-147, 2022 WL 2056291, at *9 (U.S. June 8, 2022) ("[T]here is no *Bivens* action for a First Amendment retaliation."). Therefore, Plaintiff's First Amendment retaliation claim is no longer valid.

Further, the Supreme Court's decision in *Egbert* is instructive as to how this Court should handle Plaintiff's remaining claims under the Fourth and Eighth Amendment, both of which arise in entirely new contexts. In particular, the *Egbert* court cautioned that "[a]t bottom, creating a cause of action is a legislative endeavor" and that courts should exercise extreme restraint in engaging in same. *Id.* at 5. The court explained:

> "The *Bivens* inquiry does not invite federal courts to independently assess the costs and benefits of implying a cause of action. A court faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.' *Ziglar*, 582 U. S., at ——, 137 S.Ct., at 1858. Thus, a court should not inquire, as the Court of Appeals did here, whether *Bivens* relief is appropriate in light of the balance of circumstances in the 'particular case.' *Stanley*, 483 U.S. at 683, 107 S.Ct. 3054. A court inevitably will 'impai[r]' governmental interests, and thereby frustrate

> Congress' policymaking role, if it applies the 'special factors' analysis at such a narrow 'leve[l] of generality.' *Id.*, at 681, 107 S.Ct. 3054. Rather, under the proper approach, a court must ask '[m]ore broadly" if there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate.' *Ibid.* If so, or even if there is the 'potential' for such consequences, a court cannot afford a plaintiff a *Bivens* remedy. *Ziglar*, 582 U. S., at ——, —— (slip op., at 16, 25).

*Id.* at *8. Notably, in emphasizing its general disfavor for *Bivens* claims, the Supreme Court noted: "if we were called to decide *Bivens* today, *we would decline to discover any implied cause of action in the Constitution*." *Id.* at 11.

Based on the foregoing, it is clear that Plaintiff's First Amendment retaliation claim is non-actionable and that he has failed to meet the extraordinary burden necessary to establish that this Court should extend *Bivens* to new contexts for his Fourth and Eighth Amendment claims.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court grant his Motion to Dismiss pursuant to Rules 12(b)(1) and/or 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated: June 17, 2022
New York, New York

Alina Habba, Esq.
**HABBA MADAIO & ASSOCIATES, LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
-and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Phone: (908) 869-1188
Fax: (908) 450-1881
Email: ahabba@habbalaw.com
*Attorneys for Defendant, Donald J. Trump, former President of the United States*