# Law Office of Andrew C. Laufer, PLLC

264 West 40th Street, Suite 604
New York, NY 10018
(212) 422-1020 - phone
(212) 422-1069 - facsimile
E-Mail: alaufer@lauferlawgroup.com

June 21, 2022

Via ECF
Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street. Room 701
New York, New York 10007

   Re: Cohen v. United States of America, et al 21 cv 10774 (LJL) (GWG)

Dear Honorable Judge Liman:

  Our office and the Law Office of Jeffrey K. Levine represent the Plaintiff in the referenced matter. This letter is submitted to respectfully request the Court allow the plaintiff to supplement his opposition to defendants' motions to dismiss based upon the United States Supreme Court's recent decision in Egbert v Boule 596 U.S __ No. 21-147 (2022). The Court rendered its decision soon after the plaintiff filed his oppositions to defendants' motions to dismiss plaintiff's complaint. A portion of plaintiff's opposition, concerning potential remedies under a First Amendment Bivens action, relied upon the 9th Circuits decision. Therefore, plaintiff did not have a fair opportunity to address the Supreme Court's recent decision. Egbert, id is highly distinguishable from the present matter.

  The facts in Egbert are drastically different than in the matter at bar. In Egbert, Mr. Boule operated the "Smuggler's Inn" situated on the international border between Canada and Washington. According to the evidence Smuggler's Inn was known for harboring large shipments of, inter alia, cocaine, methamphetamines and opiates, as well as aliens illegally crossing the border — which activities were well known to Agent Egbert of the US Border Patrol. Notwithstanding these known unlawful activities, Boule was also a paid informant of the US Border Patrol as well as Immigration and Customs Enforcement.

  On one occasion Agent Egbert learned from Boule that a Turkish national had flown in from New York and was on his way to the Inn. Later that day Egbert followed the vehicle transporting the Turkish guest into the Inn's driveway. After Egbert rebuffed Boule's request to cease trespassing and leave the property Egbert allegedly assaulted and battered Boule.

  While some facts were in dispute, it was unrefuted that Boule called 911 regarding Egbert and requested a supervisor. Two officers responded, confirmed the Turkish guest's immigration status was lawful and left the property.

Boule's protected First Amendment right to complain about Egbert resulted in retaliation by Egbert when requesting the IRS and SSA conduct formal inquiries into Boule's business— and these agencies did undertake investigations. Boule incurred damages of $5,000 as and for his accountant's fee to defend the audit. Other retaliatory claims of slander and intimidation to potential Inn guests caused loss of business and were also alleged as damages.

The above facts are distinguishable when compared to Michael Cohen's allegations hereunder. In the days leading up to July 9, 2020 defendants' set-up Cohen to appear at SDNY and then, as alleged in his complaint and ruled upon by Judge Hellerstein, violated his constitutional rights resulting plaintiff's unlawful remand to prison and more specifically solitary confinement where defendants knew Cohen would be confined. Cohen was unlawful remand to FCI Otisville, a facility he had been furloughed from under the Cares Act. Defendants undertook multiple reviews of Cohen's co-morbidities, which reviews included record(s) that opined plaintiff's likelihood to becoming seriously ill or die from exposure to SARS-CoV-2 existed-thus defendants were well aware of the dangers posed to Cohen by returning him to Otisville. This set-up, constitutional violations and unlawful remand were all because plaintiff desired to publish a book about his more than a decade of close experiences with defendant Trump. Cohen spent sixteen (16) days in solitary confinement before being released to home confinement by Judge Hellerstein. Boule's claims of being audited, slandered and pushed to the ground were substantially distinguishable than Cohen being shackled, handcuffed and returned to a place where solitary confinement conditions could be considered torturous and where Cohen knew he could likely die—because of a book defendants did not want to see the light of day. Factually, Cohen and Boule contexts were distinguishable.

Indeed, the Court's majority framed the issue narrowly, "whether to extend Bivens to this context" (emphasis added), meaning border patrol agents and Boule. We know the 9th Circuit was reversed and the Court decided to not find actionable First Amendment retaliation against Boule. In so doing the Court did not state that a First Amendment claim could never be brought but limited Its holding only in this Boule context. Thus, in the two-step analysis, border agents who similarly act as did Egbert are no longer a new context and will be non-suited. Thus, in the right context of "most unusual" cases, First Amendment claims may still proceed.

The Egbert Court highlighted the potential for compensable claims from violation of the Privacy Act., 26 U.S.C. §6103 (IRS/Egbert revealing Boule confidential tax information), a variety of State law claims (e.g. "extreme and outrageous conduct" or other privacy torts), defamation for lying about Boule, etc.

At bar, Michael Cohen has no alternative federal or state legislated remedy for compensation against the individual defendants who unlawfully committed him to solitary confinement in a federal prison. Even Judge Hellerstein acknowledge in his oral ruling that what happened to Michael Cohen was so aberrant that he has never seen anything like this in the 21 years of sitting as a Judge.

Plaintiff therefore respectfully requests the Court incorporate this letter into plaintiff's opposition to defendants' motions to dismiss.

Thank you for your time and attention to this matter.

Respectfully submitted,

Andrew C. Laufer

Enc.:
ACL/el
Cc:
    Alison Rovner, Esq. – Via ECF
    Alina Habba, Esq. – Via ECF